BRETT L. TOLMAN, United States Attorney (#8812)
D. LOREN WASHBURN, Assistant United States Attorney (#10993)
MARTY WOELFLE, Trial Attorney (Arizona #009363)
Attorneys for the United States of America
185 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

**FILED**
U.S. DISTRICT COURT

2007 MAY -9  A 10: 17

DISTRICT OF UTAH

BY:_____
        DEPUTY CLERK

# SEALED

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | Judge Paul G. Cassell<br>DECK TYPE: Criminal<br>DATE STAMP: 05/09/2007 @ 07:54:14<br>CASE NUMBER: 2:07CR00286 PGC |
| Plaintiff, ) | **INDICTMENT** |
| v. ) | VIO. |
| BARON LOMBARDO )<br>RICHARD CARSON-SELMAN )<br>HENRY G. BANKEY )<br>FRANCISCO LOMBARDO aka )<br>FRANK LOMBARDO )<br>COUNT C. LOMBARDO )<br>TINA I. HILL )<br>KIMBERLIE LOMBARDO aka )<br>KITTIE LOMBARDO )<br>CURRENC LTD, also known as )<br>CURRENC WORLDWIDE, LTD; )<br>GATEWAY TECHNOLOGIES, LLC; )<br>HILL FINANCIAL SERVICES, )<br>INC.; and, )<br>BETUS, )<br>Defendants. ) | 18 U.S.C. § 1962(d) – Racketeering Conspiracy<br><br>18 U.S.C. § 1344 – Bank Fraud<br><br>18 U.S.C. § 1084 – Transmission of Wagers/Wagering Information<br><br>18 U.S.C. § 1956 – Money Laundering<br><br>18 U.S.C. § 1963 – RICO Forfeiture |

The Grand Jury charges:

## COUNT 1
(Racketeering Conspiracy)

At all times material to this Indictment, in the District of Utah and elsewhere:

1.      The transmission of bets and wagers, and information assisting in the placing of bets and wagers, to or from those engaged in a gambling business, using interstate and international wire, telephone, and Internet communications, was a violation of various federal and state statutes.

2.      It was the policy of many businesses that issue credit cards and process credit card transactions not to allow the use of credit cards to fund illegal activity, including illegal gambling.

3.      It was the policy of many businesses that wire transfer funds for a fee not to allow the use of their services to fund illegal activity, including illegal gambling.

### Objects of the Racketeering Conspiracy

4.      It was an object of the Racketeering Conspiracy for the Defendants to make money illegally by helping Internet gambling Web sites conduct their illegal business. The Defendants accomplished this by disguising credit card charges for gambling as charges for something else and by causing Western Union wires of funds to pay for Internet gambling to be disguised as payments to individuals rather than payments to gambling web sites. By doing so, the Defendants allowed the Internet gambling web sites to make millions of dollars and charged these web sites millions of dollars for these services. It was also an object of the Racketeering Conspiracy to transfer the proceeds of its illegal operations into and out of the United States; to conceal its operations from the legitimate credit card companies, banks and wire transfer services it used; to conceal its operations from law enforcement agencies; and to evade the payment of federal taxes due to the United States

2

from the Conspirators, their employees and agents.

The Defendants

5.      Defendant BARON LOMBARDO was a co-founder and operator of many of the companies established and used to provide credit card processing services for businesses engaged in illegal Internet gambling. Among other things, BARON LOMBARDO controlled the movement of illegal gambling funds transferred through fraudulent Visa and MasterCard transactions.

6.      Defendant RICHARD CARSON-SELMAN was a co-founder and operator of the credit card processing companies that provided credit card processing services for businesses engaged in illegal Internet gambling. Among other things, RICHARD CARSON-SELMAN sold credit card processing services to Internet gambling web sites operating illegally in the United States.

7.      Defendant HENRY BANKEY was a co-founder and operator of the credit card processing companies that provided credit card processing services for businesses engaged in illegal Internet gambling. Among other things, HENRY BANKEY supervised the creation of the accounting system used by the defendants to track funds provided to Internet gambling web sites through Visa and MasterCard accounts and Western Union wire transfers.

8.      Defendant TINA HILL did accounting for the credit card processing companies that provided credit card processing services for businesses engaged in illegal Internet gambling. Among other things, TINA HILL was responsible for keeping track of the funds sent to the Internet gambling web sites, transferring the funds to accounts held by the Internet gambling web sites, and transferring proceeds from the credit card processing and wire transfer business to accounts controlled by the defendants.

3

9.      Defendant COUNT LOMBARDO, among other things,  managed the web site and the equipment used to create and maintain the web site  that was part of the credit card processing business that provided credit card processing services for businesses engaged in illegal Internet gambling.  COUNT LOMBARDO is BARON LOMBARDO'S brother.

10.      Defendant FRANCISCO  LOMBARDO, also known as FRANK LOMBARDO, among other things, managed and operated the system used to conduct wire transfers through Western Union that supported the businesses engaged in illegal Internet gambling.   FRANK LOMBARDO is brother to COUNT and BARON LOMBARDO.

11.      Defendant KIMBERLIE LOMBARDO, also known as KITTIE LOMBARDO, among other things, managed and operated with her husband FRANK LOMBARDO the system used to conduct wire transfers through Western Union that supported the businesses engaged in illegal Internet gambling.

12.      Organizations involved in the creation and operation of the credit card and wire transfer operation that supported businesses engaged in illegal Internet gambling included defendants CURRENC LTD, also known as CURRENC WORLDWIDE LTD; GATEWAY TECHNOLOGIES, LLC; HILL FINANCIAL SERVICES, INC.; BETUS; and other entities including but not limited to Betonsports PLC; CurrenC LLC; CurrenC WorldWide LTD UK; CurrenC International LLC; CurrenC Telecommunications; Deep Inside Hollywood, LLC; iCommerce Group; Netmoto, LLC; Canuck Capital, LLC; Tour De Force, Inc.; Qualsure, Inc.; Babl Films, LLC; Computer Consultants of Nevada, LLC; Liquid Sign Design, LLC; Risk Management; Nefario Motor Coach, Inc.; LandBaron Ultra Trust; Behnke Domestic Non Grantor Insurance Trust; Lime Light Domestic Non Grantor Insurance Trust; Red Dogg Ultra Trust; and Bablcom Domestic Non Grantor Insurance

4

Trust. These entities supported various known but unidentified Internet gambling web sites.

The Enterprise

13.    Defendants BARON LOMBARDO, RICHARD CARSON-SELMAN and HENRY BANKEY created a company called CURRENC WORLDWIDE, LTD (CURRENC WORLDWIDE). CURRENC WORLDWIDE was the primary company used by the defendants to conduct the fraudulent credit card and wire transfer processing operation described in this Indictment. The individual defendants created other entities using the "CurrenC" title in other countries, including Korea, Jamaica, and the United Kingdom. CURRENC WORLDWIDE and the other "CurrenC" entities had no legitimate business operations.

14.    Defendant TINA HILL created a company called HILL FINANCIAL SERVICES (HILL FINANCIAL) to provide accounting and technical services for the illegal Internet gambling businesses using the services of the Enterprise. HILL FINANCIAL had no clients other than the defendants and had no legitimate business operations.

15.    Defendant BARON LOMBARDO and others operated a corporation called GATEWAY TECHNOLOGIES, LLC (GATEWAY), which the defendants used to process and track illegal gambling transactions. GATEWAY operated and maintained an Internet web site called "The Gateway." GATEWAY had no clients other than the defendants.

16.    Defendants FRANK and KITTIE LOMBARDO were responsible for monitoring and supervising Western Union wire transfers made through the Gateway.

17.    Defendant HENRY BANKEY assisted in supervising the operations of HILL FINANCIAL and the formation and operation of the CurrenC companies.

18.    The defendants used businesses and banks in the United States and other countries

5

to conduct fraudulent credit card and wire transfer transactions in support of illegal Internet gambling operations. The defendants also used banks in the United States and other countries to transfer proceeds obtained from fraudulent credit card and wire transfer transactions to Internet gambling web sites, and into and out of accounts controlled by the defendants. These banks included Nevada State Bank, Washington Mutual Bank, LG Card, Korean Exchange Bank, Korean Exchange Bank UK, First Global Bank, First Caribbean International Bank of Jamaica and Antigua Overseas Bank.

19.    The defendants formed a number of trusts they used to transfer proceeds into the United States. These trusts include Bablcom Domestic Non Grantor Insurance Trust (Bablcom), Landbaron Ultra Trust (Landbaron), Behnke Domestic Non Grantor Insurance Trust (Behnke Domestic), Lime Light Domestic Non Grantor Insurance Trust (Lime Light) and Red Dogg Ultra Trust (Red Dogg).

20.    Beginning on a date no later than 2000, and continuing through the date of this Indictment, the defendants promoted and aided and abetted illegal gambling through various Internet web sites, including but not limited to those operated by Betonsports PLC, BETUS, and other Internet gambling web site operators identified as Web Sites A through D.

21.    Beginning no later than sometime in 2000, and continuing through the date of this Indictment, defendants,

BARON LOMBARDO,
RICHARD CARSON-SELMAN,
HENRY BANKEY,
TINA HILL,
COUNT LOMBARDO,
FRANK LOMBARDO,
KIMBERLIE LOMBARDO,
CURRENC LTD, also known as CURRENC WORLDWIDE, LTD,
GATEWAY TECHNOLOGIES, LLC,

6

HILL FINANCIAL SERVICES, INC.,
BETUS,

and others, known and unknown, constituted an "enterprise" (hereafter referred to as the

"GAMBLING GATEWAY ENTERPRISE," or the "ENTERPRISE"), as defined by Title 18, United

States Code, §1961(4); that is, a group of entities and individuals associated in fact. The

GAMBLING GATEWAY ENTERPRISE constituted an ongoing organization, whose members

functioned as a continuing unit, for the common purpose of achieving the objectives of the

ENTERPRISE. The GAMBLING GATEWAY ENTERPRISE was engaged in, and its activities

affected, interstate and foreign commerce.

22.    The GAMBLING GATEWAY ENTERPRISE performed credit card transactions

which defrauded federally chartered and insured financial institutions, and promoted and aided and

abetted illegal gambling businesses conducted via Internet and telephone communications. The

GAMBLING GATEWAY ENTERPRISE promoted and aided and abetted illegal gambling by

arranging funds transfers between bettors in the United States and various Internet and telephone

gambling operations by using Western Union wire transfers. The GAMBLING GATEWAY

ENTERPRISE further promoted and aided and abetted illegal gambling operations by providing

accounting and funds transfer services for Internet gambling web sites.

23. In    addition to the named defendants, members, associates and facilities of the

GAMBLING GATEWAY ENTERPRISE included publicly and privately owned Internet gambling

web sites operated illegally in the United States, including but not limited to:

> (a) BETONSPORTS PLC is a publicly held company that operated
> a number of Internet gambling web sites in the United States.
> BETONSPORTS PLC took sports bets from the United States and
> transmitted betting information using interstate and international

communications facilities in the United States. On November 9, 2006, BETONSPORTS PLC, which has been prosecuted elsewhere, entered into a stipulated permanent injunction with the United States, under which BETONSPORTS PLC agreed to stop operating in the United States.

(b) Internet Gambling Web Site A operated an Internet gambling web site in the United States, took sports bets from the United States, and transmitted betting information using interstate and international communication facilities in the United States.

(c) Internet Gambling Web Site B operated an Internet gambling web site in the United States, took sports bets from the United States, and transmitted betting information using interstate and international communications facilities in the United States.

(d) Internet Gambling Web Site C operated an Internet gambling web site in the United States, took sports bets from the United States, and transmitted betting information using interstate and international communications facilities in the United States.

(e) Internet Gambling Web Site D operated an Internet gambling web site in the United States, took sports bets from the United States, and transmitted betting information using interstate and international communications facilities in the United States.

## The Racketeering Conspiracy

24.    Beginning no later than 2000 and continuing to the present, within the District of Utah and elsewhere, defendants BARON LOMBARDO; RICHARD CARSON-SELMAN; HENRY BANKEY; TINA HILL; COUNT LOMBARDO; FRANK LOMBARDO; KIMBERLIE LOMBARDO; CURRENC LTD; GATEWAY TECHNOLOGIES, LLC; and HILL FINANCIAL SERVICES, INC., together with others known and unknown, being persons employed by and associated with the GAMBLING GATEWAY ENTERPRISE, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, §1962(c), that is, to conduct and participate, directly and indirectly, in

the conduct of the affairs of the ENTERPRISE through a pattern of racketeering activity consisting

of multiple acts involving gambling chargeable under Georgia State statutes (Ga. Code. Ann. §§16-

12-22 & 16-12-28); Illinois State statute (720 Ill. Comp. Stat. 5/28-1.1); Missouri State statute (Mo.

Rev. Stat. §572.030); and multiple acts indictable under:

    (a)    Title 18, United States Code, §1084 (the Wire Wager Act);

    (b)    Title 18, United States Code, §1344 (Bank Fraud);

    (c)    Title 18, United States Code, §1956 (Money Laundering).

It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two

acts of racketeering activity in conducting the affairs of the ENTERPRISE.

<u>Manner, Method and Means of the Racketeering Conspiracy</u>

    25.    It was part of the conspiracy that the ENTERPRISE developed and implemented a

scheme to defraud financial institutions and provided Visa and MasterCard payment processing for

Internet gambling web sites operating illegally in the United States.  The payment processing

included:

    (a)    The purposeful mis-classification of credit card transactions to fool
           banks into processing Internet gambling charges;

    (b)    The collection of monies transferred from bettors in the United States
           via credit card transactions; and

    (c)    The transfer of those funds to various Internet gambling web site
           operators.

    26.    It was part of the conspiracy that the ENTERPRISE created and operated various U.S.

and foreign business entities, and used those business entities to open bank accounts and credit card

processing accounts at various banks and financial institutions, domestic and foreign.  The

ENTERPRISE then used the facilities of the banks and financial institutions to transfer bettors' funds

to the gambling web site operators and the members and associates of the ENTERPRISE.

27.    It was part of the conspiracy that the ENTERPRISE created and operated an Internet web site known as the "Gateway." The purpose of the Gateway was to facilitate the fraudulent processing of Visa and MasterCard payments on behalf of the ENTERPRISE'S illegal gambling web site clients. The Gateway was linked to the Internet gambling web sites that used the ENTERPRISE'S services. If a bettor chose to pay the Internet gambling website via a Visa or MasterCard credit card, the bettor was directed to enter his or her billing information, including credit card account number. The information was sent to the Gateway, and through an automated process, the bettor's credit card information was checked with the card's issuer. The Gateway was available to do credit card processing for Internet gambling web sites 24 hours per day, seven days per week, 365 days per year. The ENTERPRISE provided the services of the Gateway to Internet gambling web site operators for substantial fees.

28.    When a credit card transaction was approved by the card issuer, the ENTERPRISE, using a bank as an acquiring credit card processor, would charge the bettor's Visa or MasterCard the amount authorized by the bettor. In order to assure that these transactions would be approved, the ENTERPRISE mis-classified the transactions to Visa and MasterCard, hiding the fact that the transactions were intended for gambling. In order to assure the ENTERPRISE the ability to mis-classify credit card transactions, the ENTERPRISE paid an amount based on a percentage of the total funds processed to at least one employee of the bank acting as the acquiring credit card processor. The ENTERPRISE received a per-transaction fee on all credit card transactions it processed.

29.    It was part of the conspiracy that the ENTERPRISE created and maintained a web site that allowed its client Internet gambling web site operators to obtain real-time information

regarding the credit card and wire transfer transactions processed through the Gateway. This web site was accessed via passwords provided to the illegal gambling web site operators by the ENTERPRISE and was available to those operators 24 hours per day, seven days per week, 365 days per year.

30.     It was part of the conspiracy that the ENTERPRISE obtained and used Merchant Identification Numbers (MIDS) issued by Visa and MasterCard member banks to merchants who use their credit card services.

31.     It was part of the conspiracy that the ENTERPRISE also arranged wire transfers of funds from bettors in the U.S. to various Internet gambling web sites that were clients of the ENTERPRISE. The ENTERPRISE collected gambling funds sent through Western Union, transferred those funds to the operators of the gambling web sites, and kept accounting records of those transactions. If a bettor chose to pay a gambling web site through Western Union, the information provided by the gambler was automatically sent to the Gateway. The ENTERPRISE would instruct the bettor to direct the wire transfer to a particular recipient name at a Western Union office in the Philippines. The funds were then collected by an agent of the ENTERPRISE, who notified the ENTERPRISE that the funds had been received and deposited the funds in bank accounts controlled by the ENTERPRISE. The ENTERPRISE would then notify the operators of the Internet gambling web sites that the money was in hand, and the Internet gambling web site would in turn allow the person who wired the money to gamble. In this way, the ENTERPRISE disguised the fact that the funds wired via Western Union were to be used for illegal Internet gambling. The ENTERPRISE  received a per-transaction fee on all wire transfer transactions it processed.

32.     It was part of the conspiracy that the ENTERPRISE moved money from the various bank accounts it controlled overseas to the United States through payments to various business entities, including HILL FINANCIAL, GATEWAY TECHNOLOGIES, and to private bank accounts in the U.S. controlled by the ENTERPRISE or the individual defendants.

33.     It was part of the conspiracy that the defendants created various trusts, including but not limited to Bablcom, Landbaron, Behnke Domestic, Lime Light and Red Dogg to hold proceeds of the Enterprise to conceal the origin of the funds.  The defendants used funds transferred to trust bank accounts to buy real property, cars, and other personal property.

34.     It was part of the conspiracy that HILL FINANCIAL provided accounting services to the ENTERPRISE and to individual defendants to keep track of the funds and proceeds transfers described above.

<u>Overt Acts</u>

35.     In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, the defendants and their co-conspirators committed, among others, the following acts, within the District of Utah and elsewhere:

(a)     On or about March 18, 2004, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Missouri to a recipient in the Philippines in order to facilitate the transfer of $2,000.00 to an Internet gambling web site.

(b)     On or about July 25, 2004, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Illinois to an Internet gambling web site in order to facilitate the transfer of $2,499.97 from a credit card account to the Internet gambling web site.

(c)     On or about October 19, 2004, the GATEWAY GAMBLING ENTERPRISE caused

the wiring of $15,000.00 from a bank account held by CURRENC WORLDWIDE in Jamaica to a bank account held by HILL FINANCIAL in the District of Utah.

(d)    On or about December 27, 2004, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Georgia to an Internet gambling web site in order to facilitate the transfer of $1,000.00 from a credit card account to the Internet gambling web site.

(e)    On or about January 11, 2005, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Utah to the United Kingdom, in order to facilitate the transfer of $500.00 from an individual to an Internet gambling web site.

(f)    On or about January 23, 2005, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Utah to Costa Rica, in order to facilitate the transfer of $100.00 from an individual to an Internet gambling web site.

(g)    On or about January 25, 2005, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Missouri to an Internet gambling web site, in order to facilitate the transfer of $750.00 from a credit card account to the Internet gambling web site.

(h)    On or about February 5, 2005, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Utah to Curacao, in order to facilitate the transfer of $499.98 from an individual to an Internet gambling web site.

(i)    On or about April 20, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $612,000 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

13

(j)     On or about April 20, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $480,000 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(k)     On or about April 20, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $408,000 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(l)     On or about May 6, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $500,000.00 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(m)     On or about May 12, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $975,000.00 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account in Las Vegas, Nevada.

(n)     On or about May 12, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $770,000.00 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(o)     On or about May 12, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $775,000.00 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(p)     On or about May 16, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $535,000.00 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(q)     On or about May 16, 2005, the GAMBLING GATEWAY ENTERPRISE caused the

14

wiring of $450,000.00 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(r)    On or about May 16, 2005, the GAMBLING GATEWAY ENTERPRISE caused the wiring of $525,000.00 from a bank account held by CURRENC WORLDWIDE in Antigua to a bank account located in Las Vegas, Nevada.

(s)    On or about December 14, 2005, the GAMBLING GATEWAY ENTERPRISE transmitted information from the State of Utah to Costa Rica, in order to facilitate the transfer of $500.00 from an individual to an Internet gambling web site.

All in violation of Title 18, United States Code, §1962(d).

## COUNTS 2 to 15
(Scheme to Defraud Financial Institutions)

36.    The Grand Jury re-alleges paragraphs 1 to 22 and 24 to 34 above, and further charges that beginning in or about 2000 and continuing to the date of this Indictment, defendants BARON LOMBARDO, RICHARD CARSON-SELMAN, HENRY BANKEY, TINA HILL, COUNT LOMBARDO, FRANK LOMBARDO and KIMBERLIE LOMBARDO devised a scheme and artifice to defraud financial institutions, including the federally insured banks and credit unions listed below, to obtain money from the banks and credit unions by means of false and fraudulent representations. It was part of the scheme and artifice that the defendants operated the GAMBLING GATEWAY ENTERPRISE and caused mis-coded credit card transactions to induce the banks and credit unions listed below to transfer funds to the owners and operators of Internet gambling businesses.

15

37.    On or about the dates listed below, in the District of Utah, and elsewhere, defendants BARON LOMBARDO, RICHARD CARSON-SELMAN, HENRY BANKEY, TINA HILL, COUNT LOMBARDO, FRANK LOMBARDO and KIMBERLIE LOMBARDO executed the scheme and artifice as set forth above, in that the defendants processed and caused the processing of the following credit card transactions, mis-identifying the transactions as something other than Internet gambling. The fraudulent representations resulted in the transfer of funds from the banks and credit unions to various Internet gambling web sites. The GAMBLING GATEWAY ENTERPRISE collected fees for each of the described transactions. The amounts listed below are the amounts that were paid from the issuing banks to the GATEWAY ENTERPRISE; these funds included both the fees collected by the ENTERPRISE and the amounts paid over to the Internet gambling web sites.

| Count | Date | Card | Issuing Bank | Amount |
|---|---|---|---|---|
| 2 | July 25, 2004 | MasterCard | Citibank | $2,499.97 |
| 3 | Aug. 11, 2004 | MasterCard | Harris National Bank | $1,999.95 |
| 4 | Sept. 5, 2004 | MasterCard | Columbus Bank & Trust | $140.00 |
| 5 | Oct. 1, 2004 | Visa | Capital One Bank | $1,000.00 |
| 6 | Oct. 6, 2004 | Visa | Bank of America | $375.00 |
| 7 | Oct. 8, 2004 | Visa | FIA Card Services | $650.00 |
| 8 | Oct. 20, 2004 | Visa | San Diego Credit Union | $2,500.00 |
| 9 | Oct. 28, 2004 | Visa | North Island Federal Credit Union | $5,000.00 |
| 10 | Dec. 14, 2004 | MasterCard | HSBC | $500.00 |
| 11 | Dec. 27, 2004 | Visa | Chase Bank | $1,000.00 |
| 12 | Jan. 17, 2005 | MasterCard | Washington Mutual Bank | $200.00 |
| 13 | Jan. 22, 2005 | Visa | America First Credit Union | $500.00 |

| 14 | Jan. 25, 2005 | Visa | Citibank | $750.00 |
| 15 | Jan. 31, 2005 | Visa | First Premier Bank | $900.00 |

All in violation of Title 18, United States Code, §§ 1344 and 2.

## COUNTS 16 TO 19
(Aiding & Abetting the Use of a Communications Facility to Transmit Betting Information)

38.     The Grand Jury re-alleges paragraphs 1 to 22 and 24 to 34 above, and further charges

that on or about the dates listed below, in the District of Utah and elsewhere, defendants BARON

LOMBARDO, RICHARD CARSON-SELMAN, HENRY BANKEY, TINA HILL, COUNT

LOMBARDO, FRANK LOMBARDO and KIMBERLIE LOMBARDO, and others known and

unknown, in the course of aiding and abetting individuals engaged in the business of betting and

wagering, did knowingly use and cause the use of a wire communication facility, for the transmission

in interstate and foreign commerce, between the State of Utah and the listed locations outside the

District of Utah, information assisting in the placing of bets and wagers on sporting events and

contests, and a wire communication which entitled the recipient to receive money and credit as a

result of bets and wagers, and information assisting in the placing of bets and wagers.

| Count | Date | Origin | Terminus |
|-------|------|--------|----------|
| 16 | Jan. 11, 2005 | West Bountiful, Utah | United Kingdom |
| 17 | Jan. 23, 2005 | Syracuse, Utah | Costa Rica |
| 18 | Feb. 5, 2005 | West Jordan, Utah | Curacao |
| 19 | Dec. 14, 2005 | Clearfield, Utah | Costa Rica |

All in violation of Title 18, United States Code, §§ 1084 and 2.

## COUNT 20
(Money Laundering)

17

39.    The Grand Jury re-alleges paragraphs 1 to 23 and 24 to 35 above, and further charges that on or about March 18, 2004, in the District of Utah and elsewhere, Defendants KIMBERLIE LOMBARDO and FRANK LOMBARDO did knowingly and willfully transfer funds, and cause the transfer of funds from a place inside the United States, to wit St. Louis Missouri, to a place outside the United States, to wit, the Philippines, with the intent to promote the carrying on of specified unlawful activities, that is, violations of the Wire Wager Act, Title 18, United States Code, §1084, all in violation of Title 18, United States Code, §§1956(a)(2)(A) and 2.

### COUNTS 21 to 24
(Money Laundering)

40.    The Grand Jury re-alleges paragraphs 1 to 22 and 24 to 34 above, and further charges that on or about the dates listed below, in the District of Utah and elsewhere, Defendants BARON LOMBARDO and TINA HILL did knowingly and willfully transfer funds, and cause the transfer of funds in the amounts listed below from a place outside the United States to a place inside the United States, as indicated below, with the intent to promote the carrying on of specified unlawful activities, that is, violation of the Wire Wager Act, Title 18, United States Code, §1084, and bank fraud, in violation of Title 18, United States Code, §1344. The funds involved in the transactions listed below were used to pay the operating costs of GATEWAY TECHNOLOGIES and HILL FINANCIAL.

| Count | Date | Transaction | Amount |
|-------|------|-------------|--------|
| 21 | Oct. 19, 2004 | Wire transfer from a bank in Jamaica to a bank in Utah. | $15,000.00 |
| 22 | Nov. 19, 2004 | Wire transfer from a bank in Jamaica to a bank in Utah. | $20,000.00 |

| 23 | Jan. 4, 2005 | Wire transfer from a bank in Jamaica to a bank in Utah. | $20,000.00 |
| 24 | Feb. 16, 2005 | Wire transfer from a bank in Jamaica to a bank in Utah. | $30,000.00 |

All in violation of Title 18, United States Code, §§1956(a)(2)(A) and 2.

## COUNTS 25 to 34
(Money Laundering- Concealment)

41.    The Grand Jury re-alleges paragraphs 1 to 23 and 24 to 35, and further charges that on or about the dates listed, in the District of Utah and elsewhere, defendant BARON LOMBARDO did knowingly and willfully conduct and attempt to conduct the listed financial transactions affecting interstate and foreign commerce, to wit, wire transfer of funds, which involved the proceeds of a specified unlawful activity, that is violations of the Wire Wager Act, Title 18, United States Code, §1084, knowing that the transaction was designed in whole or in part to conceal and disguise the source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction, that is, funds, represented the proceeds of some form of unlawful activity.    The funds involved in the transactions listed below represented the profits of the GATEWAY ENTERPRISE from its facilitation of illegal internet gambling and were used for the personal benefit of the defendants.

| Count | Date | Amount | From | To |
| --- | --- | --- | --- | --- |
| 25 | April 20, 2005 | $612,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
| 26 | April 20, 2005 | $480,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |

| 27 | April 20, 2005 | $408,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
|----|----------------|-------------|-------------------------|-----------------------------------|
| 28 | May 6, 2005 | $500,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
| 29 | May 12, 2005 | $975,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
| 30 | May 12, 2005 | $770,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
| 31 | May 12, 2005 | $755,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
| 32 | May 16, 2005 | $535,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
| 33 | May 16, 2005 | $450,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |
| 34 | May 16, 2005 | $525,000.00 | Bank account in Antigua | Bank account in Las Vegas, Nevada |

All in violation of Title 18, United States Code, §§1956(a)(1)(B) and 2.

## RICO FORFEITURE

42.     The allegations contained in Count 1 of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, § 1963.  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, §1963 in the event of any defendant's conviction under Count 1 of this Indictment.  The Defendants,

BARON LOMBARDO,
RICHARD CARSON-SELMAN,
HENRY BANKEY,
TINA HILL,
COUNT LOMBARDO,

FRANK LOMBARDO, and
KIMBERLIE LOMBARDO,
CURRENC LTD, also known as CURRENC WORLDWIDE, LTD,
GATEWAY TECHNOLOGIES, LLC,
HILL FINANCIAL SERVICES, INC.,and
BETUS,

i.     have acquired and maintained interests in violation of Title 18, United States Code, §1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, §1963(a)(1);

ii.     have an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, §1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, §1963 (a)(2);

iii.     have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, §1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, §1963(a)(3),

43.     The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, §1963(a)(1), (a)(2), and (a)(3), include but are not limited to at least $150,000,000.00 dollars, an amount which includes the respective values of the following, all of which are also subject to forfeiture:

a.     Real property located at 8305 Fullmoon Maple Ave, Las Vegas, NV 89117;
b.     Real property located at 1213 Mercedes Circle, Las Vegas, NV 89102;
c.     Real property located at 1832 N. Decatur Boulevard, Unit 102, Las Vegas, NV 89109;
d.     Real property located at 1832 N. Decatur Boulevard, Unit 202, Las Vegas NV 89109;

e.      Real property located at 1805 S. Pacific Coast Hwy, Unit 85, Redondo Beach, CA 90277;

f.      2005 Dodge Ram 3400, VIN: 1D7LS38CX5G825480;

g.      2006 Chrysler 300C, VIN: 2C3LA63H16H289686;

h.      2006 Mercedes Benz, VIN: WDDDJ75X16A052310;

i.      2004 Maserati Spyder, VIN: ZAMBB18A740011617;

j.      2005 Coachman Cross Country 376DS, VIN: 4UZAAHBV35CU39008;

k.      2005 Lincoln Town Car SLW, VIN: 1LNHM85W55Y668819;

l.      2005 Chrysler PT Cruiser Touring Edition VIN: 3C4FY58B15T588524

m.      All funds in Nevada State Bank Account No. ****4644 in the name of Behnke Domestic Non Grantor Insurance Trust;

n.      All funds in Nevada State Bank Account No. ****4354 in the name of Red Dogg Ultra Trust;

o.      All funds in Nevada State Bank Account No. ****1566 in the name of Bablcom Domestic Non Grantor Insurance Trust;

p.      All funds in Nevada State Bank Account No. ****4081 in the name of Landbaron Ultra Trust;

q.      All funds in Nevada State Bank Account No. ****3166 in the name of Lime Light Domestic Non Grantor Insurance Trust;

r.      All funds in Smith Barney Investment Account No. ***-*****-17-519.

44.     If any of the property described in paragraphs (i), (ii) and (iii) above, as a result of any

act or omission of a defendant --

(1)     cannot be located upon the exercise of due diligence;

(2)     has been transferred or sold to, or deposited with, a third party;

(3)     has been placed beyond the jurisdiction of the court;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any

property set forth in paragraph 41 above.

22

45.    The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, §1963.

A TRUE BILL:

_____/S/_____
FOREPERSON OF THE GRAND JURY

BRETT L. TOLMAN
United States Attorney

D. LOREN WASHBURN
Assistant United States Attorney
MARTY WOELFLE
Trial Attorney