BRETT L. TOLMAN, United States Attorney (#8812)
D. LOREN WASHBURN, Assistant United States Attorney (#10993)
MARTY WOELFLE, Trial Attorney (AZ #009363)
Attorneys for the United States of America
185 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 2:07CR00286 TS |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S MEMORANDUM IN** |
| v. | ) | **OPPOSITION TO DEFENDANTS'** |
| | ) | **MOTION TO DISMISS COUNTS 16 TO** |
| BARON LOMBARDO, et al., | ) | **19 (WIRE WAGER ACT)** |
| | ) | |
| Defendants. | ) | |

_____

The United States of America, by and through counsel undersigned, hereby submits its

memorandum in opposition to defendants' motion to dismiss Counts 16, 17, 18 and 19 (Doc.

#80) of the Indictment.[1]  The defendants claim that the application of the Wire Wager Act[2] in

_____

[1] Co-defendants Baron Lombardo (Doc. #81), Francisco Lombardo (Doc. #83), Tina Hill (Doc. #85), Count Lombardo (Doc. #88) and Henry Bankey (Doc. #90) have moved to join in this motion.  Defendant Kimberlie Lombardo has also filed a motion to join (Doc. #111).  However, her motion was untimely without good cause, and she has therefore waived her objections pursuant to Federal Rule of Criminal Procedure 12(e).  United States v. Coppola, 526 F.2d 764, 772-73 (10th Cir. 1975).

[2] Title 18, U.S.C. §1084 states, in pertinent part: "(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the

this matter is unconstitutionally broad, that the Act applies only to the transmission of sports bets

and information, and that the allegations in Counts 16 to 19 of the Indictment fail to provide

them with adequate notice of the charges against them.  However, the defendants' claims are not

supported by either the facts or the law, and their motion should be denied.[3]

## I.    REVIEW OF AN INDICTMENT PRIOR TO TRIAL

Federal Rule of Criminal Procedure 12(b) requires that a motion alleging a defect in an

indictment be raised prior to trial, while allowing a claim that the indictment fails to allege an

offense or engage the court's jurisdiction to be raised at any time.[4]  As stated by the Tenth

Circuit Court of Appeals:

> An indictment is sufficient if it sets forth the elements of the offense charged, puts
> the defendant on fair notice of the charges against which he must defend, and
> enables the defendant to assert a double jeopardy defense.  Challenging an
> indictment is not a means of testing the strength or weakness of the government's
> case, or the sufficiency of the government's evidence.  Rather, '[a]n indictment
> should be tested solely on the basis of the allegations made on its face, and such

placing of bets or wagers on any sporting event or contest, or for the transmission of a wire
communication which entitles the recipient to receive money or credit as a result of bets or
wagers, or for information assisting in the placing of bets or wagers, shall be fined under this
title or imprisoned not more than two years, or both.
(b) Nothing in this section shall be construed to prevent the transmission in interstate or foreign
commerce of information for use in news reporting of sporting events or contests, or for the
transmission of information assisting in the placing of bets or wagers on a sporting event or
contest from a State or foreign country where betting on that sporting event or contest is legal
into a State or foreign country in which such betting is legal.
(c) Nothing contained in this section shall create immunity from criminal prosecution under any
laws of any State."

[3] Generally, in order to simplify matters, the United States has responded to the defense
claims without reference to their status as aiders and abettors.

[4] "The following must be raised before trial: (B) a motion alleging a defect in the
indictment or information – but at any time while case is pending, the court may hear a claim
that the indictment or information fails to invoke the court's jurisdiction or to state an offense."

allegations are to be taken as true.' Courts should therefore avoid considering evidence outside the indictment when testing the indictment's legal sufficiency.

United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006) (interior citations omitted).

Rule 7(c) of the Federal Rules of Criminal Procedure states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is to be construed using practical, rather than technical, considerations. United States v. Bass, 411 F.3d 1198, 1202 (10th Cir. 2005).

## II.    THE WIRE WAGER ACT IS NOT LIMITED TO SPORTS BETTING

The essential elements of a Wire Wager Act violation are: (1) a person engaged the business of gambling; (2) used a wire communication facility to place bets or wagers on any sporting event or contest; or to provide information to assist with the placing of bets or wagers; or to inform someone that he or she had won a bet or wager and was entitled to payment or credit; and (3) the transmission was made from one state to another state or foreign country.[5] The type of wager is not an element of the offense, and need not be alleged in an indictment or information. See Clay v. United States, 326 F.2d 196, 198-99 (10th Cir. 1963).

The defendants claim that the Wire Wager Act is limited to illegal sports betting, and does not apply to other types of gambling. In support of this position, the defendants cite the only federal court decision directly stating that the Wire Wager Act applies only to sports betting; In re MasterCard Intern. Inc., Internet Gambling Litigation, 132 F.Supp.2d 468 (E.D. La. 2001), aff'd. 313 F.3d 257 (5th Cir. 2002). The MasterCard case involved a civil RICO claim brought against the credit card company in an attempt to recoup monies paid to illegal Internet

---

[5] Criminal Pattern Jury Instruction: Tenth Circuit, § 2.51 (2006).

3

gambling web sites. The trial court and the Fifth Circuit relied primarily on legislation then

pending in Congress in defining the scope of the Wire Wager Act. This basis no longer exists.

The legislation referred to was never enacted.[6] Additionally, the legislative history of §1084 is

not limited to that cited by the <u>MasterCard</u> Court. The House Report on the Wire Wager Act,

more authoritative than the floor speeches of the Members,[7] states, in pertinent part:

> The purpose of the bill is to assist the various States and the District of Columbia
> in the enforcement of their laws pertaining to gambling, bookmaking and like
> offenses and to aid in the suppression of organized gambling activities by
> prohibiting the use of wire communication facilities which are or will be used for
> the transmission of bets or wagers and gambling information in interstate and
> foreign commerce.

In October of 2006, Congress passed the Prohibition on Funding of Unlawful Internet

Gambling, Title 31, United States Code, §§5361 to 5367. This statute defines "bet or wager," as

§1084 does not. The statute states, in pertinent part:

> The term 'bet or wager' -- (A) means the staking or risking by any person of
> something of value upon the outcome of a contest of others, a sporting event, or a
> game subject to chance, upon an agreement or understanding that the person or
> another person will receive something of value in the event of a certain outcome;
> [] [and] (D) includes any instructions or information pertaining to the
> establishment or movement of funds by the bettor or customer in, to or from an
> account with the business of betting or wagering; . . .

---

[6] The case law referred to by <u>MasterCard</u> court did not address the question of what types
of betting and wagering the statute encompassed. The cases simply ruled that the Wire Wager
Act applied to sports bets; they did not rule that §1084 did not apply to other types of wagers.

[7] Floor statements by members of Congress are given less weight than other types of
legislative history. <u>Kenna v. United States District Court for C.D. Cal.</u>, 435 F.2d 1011, 1015 (9th
Cir. 2006). When using extrinsic aids to interpret a statute, official committee reports provide
an authoritative expression of legislation intent. "A committee report, representing a collective
statement by the drafters about the intended purpose of proposed legislation, is considered a
particularly good indicator of congressional intent when it is otherwise difficult to ascertain."
<u>Pierpoint v. Barnes</u>, 94 F.3d 813, 817 (2nd Cir. 1996).

Section 5361 also contains a "rule of construction," which states: "No provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States." Pursuant to this rule, Congress must have considered non-sports wagering on the Internet to be illegal at the time this legislation was passed. Therefore, the Fifth Circuit conclusion regarding the application of the Wire Wager Act is not supported, and should not be relied upon in this case.

In construing the terms of the Wire Wager Act, the Court should look first to the terms of the statute itself. Under §1084's disjunctive language, §1084(a) creates two distinct offenses: (1) a broad prohibition on the use of a wire communication facility for the interstate transmission of (a) bets or wagers, and (b) information assisting in the placing of bets or wagers on sporting events or contests; and (2) a prohibition on the interstate transmission of a wire communication that entitles the recipient to receive money or credit (a) as a result of bets or wagers, or (b) information assisting in the placing of bets or wagers. There is nothing in the statute to suggest that the subordinate clauses are modified by the term "sporting event or contest."

Civil enforcement provisions of the Wire Wager Act support application of the statute to gambling in general, and not simply sports betting. Section 1084(d), which provides that law enforcement agencies can require common carriers to stop carrying interstate gambling communications, refers only to "gambling information." It does not make any sense that Congress would make such transmissions subject to restraint, but exempt them from criminal prosecution.

A familiar rule of statutory construction requires courts to give effect to each clause of a statute.  See Clark v. Arizona, ___U.S.___,126 S.Ct. 2709, 2723, n. 24, 165 L.Ed.2d 842 (2006). If Congress had intended to limit the application of the Wire Wager Act to sports betting alone, it would have said so.  As written, the Act does not state such a limitation.

> A familiar principle of statutory construction is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute. ('[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.')

Hamdan v. Rumsfeld, ___ U.S. ___, 126 S.Ct. 2749, 2765-66, 165 L.Ed.2d 723 (2006).  The plain language of the Wire Wager Act prohibits "the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers."  Therefore, the Wire Wager Act applies to such information concerning all "bets or wagers."

## III.    CONDUCT ALLEGED IN COUNTS 16 TO 19 VIOLATES SECTION 1084

The defendants claim that the transmissions alleged in Counts 16 to 19 of the Indictment fail to qualify as: (1) bets or wagers; (2) information assisting in the placing of bets or wagers on any sporting event or contest; (3) information which entitles the recipient to receive money or credit as a result of bets or wagers; or (4) information assisting in the placing of bets or wagers. In fact, all of the transmissions fall directly into one or more of the categories stated above.

The defendants claim that the transmissions alleged in the Indictment are only "tangential" to wagering, and that the Wire Wager Act, which must be narrowly construed, does not prohibit them.  In support of this claim, the defendants cite to United States v. Wiltberger, 18 U.S. 76, 5 L.Ed. 37 (1820).  This venerable case involved a prosecution for manslaughter that

occurred on board an American vessel cruising a river in China.  The Court held that it had no

jurisdiction over the matter, finding that the reach of U.S. criminal statutes could not be stretched

so far.

> The rule that penal laws are to be construed strictly, is perhaps not much less old
> than construction itself.  It is founded on the tenderness of the law for the rights of
> individuals; and on the plain principle that the power of punishment is vested in
> the legislative, not the judicial department. . . .
> It is said, that not withstanding this rule, the intention of the law maker governs in
> the construction of penal, as well as other statutes. . . . The maxim is not to be so
> applied as to narrow the words of the statute to the exclusion of cases which those
> words, in their ordinary acceptation, or in that sense in which the legislature has
> obviously used them, would comprehend.  The intention of the legislature is to be
> collected from the words they employ.  Where there is no ambiguity in the words,
> there is no room for construction.

Wiltberger, 18 U.S. at 95-96.  In this case, application of the Wire Wager Act is quite clear.

There is no ambiguity in the statute.  Therefore, there is no basis for statutory construction to

artificially narrow its application.  United States v. Michel, 446 F.3d 1122, 1135 (10th Cir. 2006).

        The defendants claim the right to application of the rule of lenity, which they describe as

a "tie-breaker" to be employed when the Government and the defense are at odds regarding the

meaning of a statute.  This is not the meaning or valid application of the rule of lenity.  United

States v. White, 888 F.2d 490, 497 (7th Cir. 1989) ("The rule of lenity is a tie-breaker when there

is an otherwise unresolved ambiguity," (emphasis added)); United States v. Montgomery, 14

F.3d 1189, 1198, n. 8 (7th Cir. 1994) ("the rule should not be applied where it would conflict with

the implied or expressed intent of Congress; rather, it provides an interpretive guideline where

Congressional intent is unclear.") Where there is no ambiguity, the Rule cannot be applied.

The defendants claim that the allegations in Counts 16 to 19 are deficient because they do not allude specifically to wagering on sports or sporting events. First, the Wire Wager Act is not limited to sports betting, as set forth above. Second, the Indictment does allege that the Gambling Gateway Enterprise facilitated conducted sports betting. Counts 16 to 19, alleged in ¶ 38 of the Indictment, state that the unlawful communications involved, among other topics, transmissions relating to sports betting.

Even if the Indictment did not specifically allege that the communications concerned sports wagers, the precise circumstances of each communication is a matter for proof at trial. After presentation of the Government's case in chief, the failure of the United States to prove that the transmissions concerned matters covered by the Wire Wager Act would support the grant of a motion pursuant to Federal Rule of Criminal Procedure 29. Prior to that point, however, the allegations in the Indictment are sufficient to allow the Government to present the case to a jury.

III.    **THE PHRASE 'INFORMATION ASSISTING IN THE PLACING OF BETS OR WAGERS' IN THE WIRE WAGER ACT IS TO BE READ BROADLY, TO EFFECTUATE THE PURPOSES OF THE STATUTE**

The defendants claim that, pursuant to the rule of lenity, the phrase "information assisting in the placing of bets or wagers" in the Wire Wager Act must be read narrowly. However, the defendants do not state how the challenged phrase is ambiguous, or why the Court could not determine, from a plain reading of the statute and the Indictment, whether the transmissions alleged in Counts 16 to 19 come within its meaning. In support of their claims, the defendants cites to Truchinski v. United States, 393 F.2d 627 (8th Cir. 1968). The defendants argue that the determining factor in Truchinski, where only one of the subject calls involved placing a bet,

8

centered on that fact. This conclusion is not supported by the opinion in Truchinski,[8] or any other applicable case law.

The Wire Wager Act prohibits the transmission of bets, and the transmission of "information assisting in the placing of bets or wagers." The statute does not prohibit the transmission of information resulting in the placing of bets or wagers. It was clearly intended that the statute encompass transmissions that were not actual bets, and the courts addressing this issue have not limited its application to actual wagers. For example, in the case of United States v. Scavo, 593 F.2d 837 (8th Cir. 1979), the defendant admitted that he transmitted line information in interstate commerce, but claimed that he wasn't engaged in the business of betting or wagering, and therefore was not in violation of §1084. The Court upheld the defendant's conviction, stating that:

> the evidence showed that appellant furnished line information to [the bookmaker] on a regular basis; that [the bookmaker] relied on this information; that some sort of financial arrangement existed between appellant and [the bookmaker]; that appellant was fully aware of [the bookmaker's] bookmaking operation; and that accurate and up-to-date line information is of critical importance to any bookmaking operation.

Scavo, 593 F.2d at 842. There is no allegation that the defendant in Scavo ever took a bet, or that the information he transmitted resulted in a particular wager.

In a Second Circuit case, the Court found that a defendant who ran his bookmaking operation via a message service was transmitting "information assisting in the placing of bets or wagers" prior to the point when bets were actually taken. "The telephone calls to the [message number] informed [the defendant] that someone was ready to place a bet and how that person

---

[8] The gravamen of the Truchinski opinion was a response to the defendant's First Amendment claim.

9

could be reached.  This is certainly 'information assisting in the placing of bets or wagers' within the meaning of 18 U.S.C. §1084."  United States v. Kelley, 395 F.2d 727, 729 (2nd Cir. 1968).

In another Second Circuit case, the defendant was convicted of violating §1084 under circumstances similar to those in this case.  Jay Cohen, who operated an offshore Internet sports book, was convicted of violating all three of the prohibitive clauses of the statute.  "Cohen appeal[ed] the district court's instructions to the jury regarding what constitutes a bet per se. Cohen argues that under [his sports book's] account-wagering system, the transmissions between [his sports book] and its customers contained only information that enabled [the sports book] itself to place bets entirely from customer accounts located in Antigua."  United States v. Cohen, 260 F.3d 68, 74 (2nd Cir. 2001).  The Court ruled that the distinction was immaterial: "Section 1084(a) prohibits the transmission of information assisting in the placing of bets as well as the transmission of bets themselves."  Id. at 75.

The defendants claim that only a communication that specifically "entitles" a wagerer to money would qualify as prohibited conduct under the statute.  The defendants have carefully constructed their description of what sort of transmission would "entitle" one to receive money, but in reality, the restrictions described would limit the Wire Act to negotiable instruments.  The plain language of the Wire Wager Act does not support such restrictions, and they should not be applied.

Section 1084 states that transmissions "which entitle[] the recipient to receive money or credit as a result of bets or wagers" are prohibited.  The statute comprehends promises or arrangements to pay, hence the use of the term "credit."  The statute encompasses transmissions regarding money to be sent to a bookmaker, as well as money sent from a bookmaker to a

gambler.  See United States v. Corrar, 2007 WL 19682, *5 (N.D. Ga. 2007) ("If Congress sought

only to criminalize bookmaking, 'being engaged in the business of betting or wagering' would

simply read 'receives bets or wagers.').  Therefore, the limitation on the application of the Wire

Wager Act advocated by the defendants is not supported by applicable case law, or the plain

language of the statute.

## IV.    THE INDICTMENT PROVIDES ADEQUATE NOTICE OF THE CRIMES CHARGED

The defendants' contend that the Indictment does not adequately inform them of the

charges they are to face at trial.  The defense contention is generally a restatement of the

arguments regarding the scope and application of the Wire Wager Act, re-dressed in

Constitutional clothes.  However, as demonstrated above, the scope and application of the Act

are quite clear, and will not support the defendants' claims.

> There are three related manifestations of the fair warning requirement.  First the
> vagueness doctrine bars enforcement of 'a statute which either forbids or requires
> the doing of an act in terms so vague that men of common intelligence must
> necessarily guess at its meaning and differ as to its application.'  Second, . . . the
> cannon of strict construction of criminal statutes, or rule of lenity, ensures fair
> warning by resolving ambiguity in a criminal statute as to apply it only to conduct
> clearly covered.  Third, . . . due process bars courts from applying a novel
> construction of a criminal statute to conduct that neither the statute nor any prior
> judicial decision has fairly disclosed to be within its scope.  In each of these
> guises, the touchstone is whether the statute, either standing alone or as construed,
> made it reasonably clear at the relevant time that the defendants' conduct was
> criminal.

United States v. Lanier, 520 U.S. 259, 266-67, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997)

(interior citations omitted); see also United States v. Gama-Bastidas, 222 F.3d 779, 785-86 (10th

Cir. 2000).

11

In the Indictment, each Wire Wager Act count alleges that: (1) the defendants aided and abetted persons engaged in the business of betting and wagering; (2) the defendants knowingly used or caused the use of interstate and foreign communication facilities; (3) to transmit information assisting in the placing of bets and wagers on sporting events and contests, and information which entitled the recipient to receive money and credit as a result of bets and wagers. This is sufficient information to allow the defendants to prepare their defenses to these charges. Therefore, the defendants' claim to lack of fair notice is not supported, and their motions on that basis should be denied.

## V.      DISMISSAL OF THE INDICTMENT IS AN INAPPROPRIATE REMEDY IN THIS CASE

Even if the defendants' claims regarding the scope of the Wire Wager Act were true, there would be no basis for dismissal of the Indictment. At the very most, such a finding would require striking the non-sports betting allegations in the Indictment. Excision of these allegations would not impermissibly alter the charges against the defendants, and would not prejudice them in the preparation of their defenses or at trial.

Generally, an indictment may not be amended, other than as to matters of form. United States v. Whitman, 665 F.2d 313, 316 (10th Cir. 1981). "However, withdrawing a part of the charge from jury consideration does not work an amendment if nothing is thereby added to the indictment. Withdrawal that narrows the defendant's liability is permissible, so long as the remaining allegations state an offense and give the defendant notice of the charges he must be prepared to meet." Whitman, at 316. Removing references regarding non-sports wagers from the Indictment would not change the offenses charged, nor deprive the defendants of the ability to prepare to meet the Government's case.

> As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.
>
> * * *
>
> In Salinger v. United States,[9] . . . we explicitly held that where an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment.

United States v. Miller, 471 U.S. 130, 136 & 145, 105 S.Ct. 1811, 1815 & 1819-20, 85 L.Ed.2d 99 (1985).

In the Miller opinion, the Supreme Court explicitly overruled Ex Parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887):

> To the extent that Bain stands for the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it, that case has simply not survived. To avoid further confusion, we now explicitly reject that proposition.

Miller, 471 U.S. at 144, 105 S.Ct. at 1819.

If the Court requires excision of "non-sports" betting allegations from the Indictment, the language of Counts 16 to 19 would not change, as it is taken directly from the statute. Nor would the evidence to be presented at trial, as the United States would offer evidence that the defendants aided and abetted non-sports betting as proof of the existence and operation of the Gambling Gateway Enterprise. See United States v. O'Brien, 131 F.3d 1428, 1432 (10th Cir. 1997). Therefore, the very most that due process requires, should the Court determine that the Wire Wager Act does not apply to non-sports wagers, is an instruction to that effect after the submission of the evidence to the jury.

_____

[9]Salinger v. United States, 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed.2d 793 (1927).

13

## V.    **CONCLUSION**

The defendants' interpretation and application of the Wire Wager Act is not supported by the language of the statute, or the applicable case law.  Therefore, the motion to dismiss Counts 16 to 19 of the Indictment should be denied.

Respectfully submitted this 2nd day of November, 2007.

BRETT L. TOLMAN
United States Attorney

/s/ *D. Loren Washburn*
D. LOREN WASHBURN
Assistant United States Attorney

/s/ *Marty Woelfle*
MARTY WOELFLE
Trial Attorney
Organized Crime & Racketeering Section

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2007, the foregoing was filed  with the Clerk of the
Court to be served by operation of the Court's electronic filing system upon the following:

D. Gilbert Athay
43 East 400 South, Suite 325
Salt Lake City, UT 84111-2767

David V. Finlayson
David V. Finlayson, LLC
43 East 400 South
Salt Lake City, UT 84111

Scott C. Williams
Scott C. Williams LLC
43 East 400 South
Salt Lake City, UT 84111

Mark R. Gaylord
Ballard Spahr Andrews & Ingersoll, LLP
One Utah Center - Suite 600
201 South Main Street
Salt Lake City, UT 84111-2221

G. Fred Metos
McCaughey & Metos
10 West Broadway, Ste. 650
Salt Lake City, UT 84101

Vanessa M. Ramos
Utah Federal Defenders
46 W. Broadway, Ste. 110
Salt Lake City, UT 84101

Michael Pancer
4th Floor
105 West F Street
San Diego, CA 92101-6036

Fred D. "Pete" Gibson III
Lionel Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street

/s/ _____