BRETT L. TOLMAN, United States Attorney (#8812)
D. LOREN WASHBURN, Assistant United States Attorney (#10993)
MARTY WOELFLE, Trial Attorney (AZ #009363)
Attorneys for the United States of America
185 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION
_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Case No. 2:07CR00286 TS |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH DESERT LANE SEARCH WARRANT AND SUPPRESS EVIDENCE** |
| BARON LOMBARDO, et. al | ) ) | |
| Defendants. | ) ) ) | **EXHIBITS FILED UNDER SEAL** |
|  |  | Judge Ted Stewart |

_____

The United States of America, by and through the undersigned attorneys, hereby submits its memorandum in opposition to Defendants' motion to quash a search warrant and suppress the evidence obtained during the execution of that warrant.[1] Defendants

---

[1] This motion was initially filed by Defendant Richard Carson-Selman on October 19, 2002 (Docket # 77). It was subsequently joined by Defendants Baron Lombardo (Docket #81), Tina Hill (Docket # 85), Count C. Lombardo (Docket # 89), and Henry Bankey (Docket #90). It has not been joined by Francisco Lombardo, Kimberlie Lombardo, or any of the institutional Defendants. At the direction of the Court, the Motion was re-filed by Defendant Carson-Selman on October 22, 2007 (Docket # 106).

have challenged the search of the offices located at 1111 Desert Lane, Las Vegas, Nevada. The Defendants argue that the warrant should be suppressed because the information included in the Affidavit failed to establish probable cause that the defendants were engaged in illegal conduct, and that there was no link between the evidence sought the location searched. The Defendants also argue that the information from the cooperating witnesses was not sufficiently corroborated. Finally, the Defendants claim that the affiant made false statements in the Affidavit sufficient to vitiate probable cause.[2]

Because this case involves a search warrant, the United States relies on the validity of that warrant and asserts that the evidence seized should not be suppressed. Furthermore, the Court should resolve the motion without an evidentiary hearing in this matter.[3]

## ARGUMENT

I.  **Factual Introduction**

    A.    Procedural History

---

[2] The Defendants also argue that they have standing to challenge the search. The United States does not contest the standing of any of the Defendants who have joined this motion except Henry Bankey, who was not employed by Hill Financial or Gateway Technologies (indeed, he had been sued for breach of his fiduciary duties to those companies) at the time of the search and therefore had no reasonable expectation of privacy in the offices of Hill Financial or Gateway Technologies. United States v. Anderson, 154 F.3d 1225, 1230-31 (10th Cir. 1998). Defendant Bankey has not filed a motion explaining the basis for his claim of standing to challenge this search warrant.

[3] Any challenge to the sufficiency of the affidavit in support of the search warrant must be assessed by a review of the four corners of the document, and no further evidence is necessary. Kaiser v. Lief, 874 F.2d 732, 734-35 (10th Cir. 1989).

On May 10, 2006 Special Agent Jamie Hipwell of the Internal Revenue Service submitted an affidavit (the "Affidavit") in support of a search warrant to United States Magistrate Judge George W. Foley of the District of Nevada. The Affidavit is attached as Exhibit A, filed under seal. Special Agent Hipwell submitted his Affidavit seeking authorization to search the offices of Gateway Technologies, LLC and Hill Financial Services, Inc. located at 1111 Desert Lane, Las Vegas, Nevada, for documents related to Internet gambling and for bank records of the individual Defendants. (Exhibit A at Attachment A). Based on the information contained in the Affidavit, Magistrate Judge Foley authorized the search on May 11, 2007. A copy of the search warrant is attached as Exhibit B, filed under seal.

### B. The Search Warrant Affidavit

The Affidavit explained that the information in the Affidavit was gathered by Special Agent Hipwell and other agents during the course of a criminal investigation. (Exhibit A at 2). "During the course of the investigation, [Hipwell] reviewed law enforcement reports, subpoenaed documentation obtained from various businesses and banking entities, and Federal income tax returns filed with the Internal Revenue Service." Id. Hipwell participated in surveillance of the premises to be searched, including taking note of the cars in the parking lot, (Id. at 12), and examining the trash that had been placed in the dumpsters on multiple occasions. (Id. at 12, 28). Additionally, Hipwell spoke with former employees of the target businesses (the "cooperating witnesses"). (Id.

at 2). Hipwell also talked to others with information about the defendants business. (Id. at 16-17).

According to the Affidavit, the Defendants were part of a RICO Enterprise that facilitated illegal Internet gambling. (Exhibit A at 6-12). Agent Hipwell described that the Defendants created web-based payment processing software that was used by the Defendants' clients – Internet gambling websites – to accept credit card payments made through Visa and Mastercard. (Id. at 6-7). This web interface was operated by Gateway Technologies, LLC, which was registered with the Utah Department of Commerce on May 3, 2005, with its place of business in Draper, Utah. (Id. at 6, 20). The software deliberately mis-coded the transactions "as a purchase of goods or services not involving gambling." (Id. at 7). The money from these credit card payments was sent to the Enterprise's bank accounts in Korea. (Id.). The Defendants then transferred these funds to a bank in Jamaica. (Id.). The Gambling Gateway Enterprise charged the Internet gambling websites a fee for this payment processing service. (Id. at 8). In order to secure the cooperation of LG Card – the merchant bank that processed the transactions on behalf of the defendants – the Defendants made payments to an employee of LG Card based on the total amount processed by LG Card. (Id.). In all the Defendants facilitated the transfer of more than $150,000,000 to Internet gambling websites. (Id.)

The Defendants' business also involved processing payments to Internet gambling websites through Western Union. (Id. at 8-9). The Defendants provided would-be

gamblers with false names and directed the gamblers to wire funds to individuals by those names in and around Manilla, the Philippines. (Id. at 9). The Defendants used an agent named Duke Ventura, who lived in the Philippines, to accept these funds and wire them to bank accounts controlled by the Defendants. (Id.).

Hill Financial Services, Inc., a Utah corporation owned and directed by Tina Hill, provided financial services to the Enterprise. (Id. at 9-10, 20-21). Specifically, employees of Hill Financial collected financial data, reconciled clients' accounts, and issued wire instructions to various banks. (Id. at 10).

During the time that the cooperating witnesses were employed by Hill Financial and Gateway Technologies, the businesses were located in Draper, Utah. (Id. at 28). Later, the Defendants moved the offices to 1111 Desert Lane, Las Vegas, Nevada, the location that was searched. (Id.). Special Agent Hipwell and others confirmed that Gateway Technologies and Hill Financial were operating at the 1111 Desert Lane address through examination of the garbage from that location. (Id.). Special Agent Hipwell reported that when he collected garbage from 1111 Desert Lane on October 16, 2006, the evidence obtained indicated that Hill Financial and Gateway Technologies continued to operate and to use offshore bank accounts at banks that were known to be used by the Enterprise. (Id. at 28). Later garbage collections also indicated that Hill Financial and Gateway Technologies continued to operate until at the Desert Lane address until at least April, 2007. (Id. at 12, 28-9). When the agents reviewed the trash, they found Gateway

Technologies' accounts payable and general ledger reports, phone lists of both Gateway Technologies and Hill Financial personnel, client invoices, statements, and envelopes from offshore banks known to be used in the money laundering aspects of the Enterprise, and personal documents indicating that Richard Carson-Selman used 1111 Desert Lane as his business address. (Id. at 12, 28-29).

In addition to the foregoing, the Affidavit also contained information that corroborated the statements of the cooperating witnesses. The cooperating witnesses were identified, including their employment history. (Id. at 12-16). The Affidavit described the cooperating witnesses' role in Gateway Technologies and Hill Financial, which established the basis for their knowledge of the facts they provided. (Id.). The cooperating witnesses provided the investigating agents with data identifying thousands of people who conducted gambling transactions through the Enterprise. (Id at 16). Agents interviewed many of these gamblers, who confirmed that the transactions on the dates identified were for gambling conducted over the Internet. (Id.).

The cooperating witnesses described numerous bank accounts and banking transactions that were conducted on behalf of the Enterprise. (Id. at 9-11). The Affidavit recounts that IRS Special Agents confirmed the existence of some of these bank accounts and reviewed bank records from many accounts that were described by the cooperating witnesses. (Id. at 16).

As detailed in the Affidavit, the cooperating witnesses also told the investigators

that Neil Gallagher had helped the Defendants form contacts with LG Card. (Id. at 8). Gallagher, a former United States Congressman (Id.), confirmed that he introduced the Defendants to a Korean banker, and that he became aware that the Defendants were using this Korean bank to process Internet gambling transactions. (Id. at 16-17).

The cooperating witnesses also informed investigators that the business had moved from its location in Draper, Utah, to 1111 Desert Lane in Las Vegas, Nevada. (Id. at 28). IRS Special Agents corroborated this by collecting and examining trash from the 1111 Desert Lane on three occasions. (Id. at 12, 28). Agents also confirmed that in 2006, office equipment that was leased to Hill Financial was moved from the Draper address to 1111 Desert Lane, Las Vegas, Nevada. (Id. at 28).

The Affidavit included information that might have negatively affected the cooperating witnesses credibility, including that they had been given immunity by the government, (Id. at 4), that they said they had been threatened by the Defendants, (Id. at 4), and that they were embroiled in a lawsuit with the Defendants. (Id. at 11). Nonetheless, the Affidavit informed Magistrate Judge Foley that in their attempts to corroborate the witnesses' story, at no time had the agents found the statements of the cooperating witnesses to be untrue. (Id. at 4).

II.     **The Affidavit Contained Probable Cause**

    A.     The Court Should Defer to the Magistrate's Finding of Probable Cause.

The United States Supreme Court has stated that in search warrant cases, the "task

of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or other evidence of a crime will be found in a particular place." Jones v. United States, 362 U.S. 257, 271 (1960) (citations and quotations omitted). Moreover, the Court has stated that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of a *de novo* review." Illinois v. Gates, 462 U.S. 213, 236 (1978). Rather, a "magistrate's determination of probable cause should be paid great deference" by reviewing courts as a "grudging or negative attitude" would be "inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." Id. at 236; see Franks v. Delaware,, 438 U.S. 154, 172 (1978); United States v. Finnigin, 113 F.3d 1182, 1185 (10th Cir. 1997).

Despite the presumption of validity given to search warrants and their affidavits, the Defendants now claim that the Affidavit submitted to Judge Foley by Agent Hipwell was not sufficient to state probable cause that evidence of criminal conduct would be found at 1111 Desert Lane. In assessing that claim, the duty of this Court "is simply to ensure that the magistrate had a substantial basis for conclud[ing] that probable cause existed." Illinois v. Gates, 462 U.S. at 238-39 (citing Jones v. United States, 362 U.S. 257, 271 (1960)(citations and quotations omitted)).

Based on these facts articulated in Section I. B. above, it was reasonable for

Magistrate Judge Foley to conclude that there was a "fair probability" that evidence of the Gambling Gateway Enterprise would be found in the offices of Hill Financial and Gateway Technology. Jones, 362 U.S. at 271.

Giving great deference to Judge Foley's probable cause determination, this Court should deny the Defendants' motion to suppress.

> B. The Affidavit Established Probable Cause to Believe that a Crime had been Committed.

An affidavit in support of a search warrant need not establish each element of the crimes that will ultimately be charged. "There are no technical rules . . . requiring that the elements of a crime, or the sequential events of a crime, must be shown." United States v. Giacalone, 541 F.2d 508, 514 (6th Cir. 1976). "[P]roof of the crime is supposed to be the result of a search, not a required precondition of the search." Id. In order to state probable cause to search a particular location, the supporting affidavit must set "forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover . . . evidence of a crime." United States v. Rowland, 145 F.3d 1194, 1204 (10th Cir. 1998).

As noted in detail above, the Affidavit included information that Gateway Technologies and Hill Financial processed payments on behalf of Internet gambling businesses. As explained in the Affidavit, this process used interstate and international wires, using the Internet, Western Union wires, and bank wires. Moreover, the Affidavit indicated that the Gateway software purposely mis-coded the information that was used

9

by credit card issuing banks in their approval process. The Affidavit also alleges that the Defendants made payments to a bank employee in order to "secure LG Card's agreement to process" the gambling payments. (Exhibit A at 8).

The Affidavit also included evidence of the use of multiple offshore banks and the wiring of proceeds from the Enterprise from those banks to banks in the United States. (Id. at 11).

In light of all this information included in the Affidavit, and giving great deference to Judge Foley's probable cause determination, Judge Foley had a substantial basis for conclud[ing] that probable cause existed to believe that various crimes had been committed.

  C. <u>The Affidavit Established Probable Cause to Believe that Evidence of the Crimes Would be Found at 1111 Desert Lane, Las Vegas, Nevada.</u>

"[P]robable cause to issue a search warrant only exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." Rowland, 145 F.3d at 1204. In determining whether probable cause exists to issue a search warrant, a magistrate's task is to make a "practical, common-sense decision" based on the totality of the circumstances as set forth in the affidavit. Illinois v. Gates, 462 U.S. at 238.

As noted in Section I.B. above, the Affidavit provided a substantial basis to support Magistrate Judge Foley's determination that probable cause existed. The

Affidavit explained that Hill Financial and Gateway Technologies were part of the Gambling Gateway Enterprise. The Affidavit also provided evidence that Hill Financial and Gateway Technologies had moved from Draper, Utah to 1111 Desert Lane, Las Vegas, Nevada, including moving Hill Financial's office equipment.

Agents conducting surveillance saw Defendant Baron Lombardo at 1111 Desert Lane, and saw cars registered to other Defendants in the parking lot. Agents also found garbage that linked Gateway Technologies and Hill Financial to 1111 Desert Lane. This garbage indicated that the companies were likely still involved in illegally processing Internet gambling payments.

Based on all the facts identified in the Affidavit, this Court should defer to Judge Foley's decision that, based on totality of the circumstances, probable cause existed to conclude that evidence of the crimes alleged would be found at 1111 Desert Lane. Accordingly the Defendants' motion should be denied.

    D.    <u>The Affidavit Included Sufficient Evidence Corroborating the Statements of the Cooperating Witnesses.</u>

In <u>Illinois v. Gates</u>, 462 U.S. at 230-32, the Supreme Court adopted a "totality of the circumstances" test to determine when information from an anonymous or confidential informant can establish probable cause. An informant's "veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report." <u>Id</u>. at 230. Corroboration of informants' tips is one way of establishing reliability of the informant. <u>Id</u>. at 241-46. "When there is sufficient independent corroboration of an

informant's information, there is no need to establish the veracity of the informant." United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir.2000).

As noted above, the investigating agents took numerous steps to corroborate the information given them by the cooperating witnesses.  Specifically, they subpoenaed business and bank records, interviewed gamblers, interviewed a former Congressman who had worked with the Defendants, conducted surveillance and examined garbage.  In the course of their investigation, Agents never found the cooperating witnesses to have given false information.

Giving great deference to Judge Foley's probable cause determination, the Affidavit contained sufficient information that Judge Foley could have found that in the totality of the circumstances, the cooperating witnesses' statements had been corroborated and probable cause had been established.  The Defendants' motion to suppress, therefore, should be denied.

III.    **The Good Faith Exception Applies**.

In reviewing the four corners of the Affidavit, if this Court were to conclude that the Affidavit submitted to Judge Foley by Agent Hipwell did not establish probable cause, the Court should deny the Defendants' motion to suppress because Agent Hipwell and the other agents involved in the search acted in a "good faith" reliance on Judge Foley's determination of probable cause.[4]

---

[4] Although the Defendants claim that Special Agent Hipwell knowingly, or with reckless disregard for the truth, made false statements to Magistrate Judge Foley, they fail to identify any such false statements.  Moreover,

In United States v. Leon, 468 U.S. 897, 918 (1984), the United States Supreme Court addressed the issue of challenges made to search warrants, stating that the exclusionary rule should only be applied in those unusual cases when its purpose, which is to deter police misconduct, would be advanced. Under this "good faith exception," the Court held that the exclusionary rule would not apply when an officer acted "in objectively reasonable reliance on a subsequently invalidated search warrant." Id. at 922.

In assessing whether or not the good faith exception applies, the "first notion to be remembered in considering the good faith principle is the presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith." United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985)(citation omitted). Because "the good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization, the reviewing court must examine the text of the warrant and the affidavit to ascertain whether the agents might have reasonably presume[d] it to be valid." United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993) (citations and quotations omitted).

> In short, the question is whether the officer is acting as a reasonable officer would and should act in similar circumstances. However, when reviewing an officer's

---

they failed to submit any affidavits to meet the substantial preliminary showing required under Franks v. Delaware, 438 U.S. 154 (1978), in order to challenge an affidavit in support of a search warrant. Even if the defendant were to make such a "substantial preliminary showing," no evidentiary hearing is needed unless the affidavit is found to lack sufficient probable cause once the challenged information in the affidavit is excised. United States v. Barrera 843 F.2d 1576, 1580 (10th Cir. 1988). In any event, the Defendants have yet to make the showing required under Franks.

>reliance upon a warrant, we must determine whether the underlying documents are *devoid* of factual support, not merely whether the facts they contain are legally sufficient. Thurs, [i]t is only when [an officer's] reliance was *wholly unwarranted* that good faith is absent. Indeed, [p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

Id. at 1454 (citations & quotations omitted).

The good faith exception recognizes that "police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant, particularly where, with the benefit of hindsight and thoughtful reflection, reviewing judges still cannot agree on the sufficiency of the affidavit." McNeely, 6 F.3d at 1454 (quotations & citations omitted). "An officer who knows or should have known, however, that a search warrant was invalid may not rely upon the good faith exception to immunize his subsequent seizure of evidence." Id. at 1455.

In the instant case, there is nothing to indicate that Agent Hipwell would have had any reason to believe the Affidavit was constitutionally invalid, or even questionable. In light of the strong presumption in favor of search warrants, the great deference accorded to Judge Foley's finding of probable cause, and the fact that the Affidavit was not devoid of factual support for probable cause, a reasonable agent in Agent Hipwell's shoes would have assumed the search warrant was valid. See McNeely, 6 F.3d at 1455. The warrant and subsequent search, therefore, should be upheld.

## CONCLUSION

Based on the foregoing, the government moves the Court to deny Defendants' Motion to Quash Desert Lane Search Warrant and to Suppress Evidence.

Respectfully submitted this 2nd day of November, 2007.

                                      BRETT L. TOLMAN
                                      United States Attorney


                                      /s/ *D. Loren Washburn*
                                      D. LOREN WASHBURN
                                      Assistant United States Attorney

                                      /s/ *Marty Woelfle*
                                      MARTY WOELFLE
                                      Trial Attorney
                                      Organized Crime & Racketeering Section

.