D. GILBERT ATHAY (0143)
ATTORNEY FOR DEFENDANT
43 East 400 South
Salt Lake City, Utah 84111
Telephone:  (801) 364-1333
Facsimile: (801) 364-3232

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION
_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | DEFENDANT BARON LOMBARDO'S MEMORANDUM REGARDING JAMES HEARING |
| Plaintiff, | : | |
| v. | : | |
| BARON LOMBARDO, | : | Case No. 2:07CR286 |
| Defendant. | : | Judge Ted Stewart |

_____

Baron Lombardo, by and through his lawyer, D. Gilbert Athay, submits this memorandum in opposition to the government's memorandum regarding the <u>James</u> hearing issue.  The defendant herein respectfully submits that the government failed to establish a conspiracy whose membership included Baron Lombardo.

## **ARGUMENT**

There is no dispute as to the governing law in this case.  Rule 801(d)(2)(E) of the Federal Rules of Evidence provides for the admissibility of co-conspirator statements under certain defined circumstances.  "[I]f . . . the statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in the furtherance of the conspiracy."

The 10th Circuit in *United States v. Urena*, 27 F.36 1487, 1490 (10th Circuit) has ruled

that before the court can admit the statements of a co-conspirator at trial, the court must find, by a preponderance of the evidence, that a conspiracy existed and that the declarant and the defendant's against whom the statements will be offered were members of the conspiracy and that the statements were made in the course of and in furtherance of the conspiracy.

In proving that a conspiracy existed, the 10th Circuit has ruled that the government must establish four distinct elements: (1) That two or more persons agreed to violate the law; (2) That the defendant knew the essential objectives of the conspiracy; (3) The defendant knowingly and voluntarily became a part of the conspiracy and (4) The alleged conspirators were interdependent. *United States v. Evans*, 970 F.2d 663, 668 (10th Circuit 1992).

The government in it's Indictment and Memorandum of Law has alleged a Racketeering Conspiracy whose purpose was to facilitate on-line gambling by disguising or concealing the identity of monetary transactions for customers participating in on-line gambling.

The government's case is based upon the theory that a conspiracy existed.. The purpose of this conspiracy was to facilitate on-line gambling by disguising or concealing the identity of monetary transactions for customers using credit cards to participate in on-line gambling.

The government relies heavily on Exhibits 17(A), 17(b) and 17(C) as the basis for establishing a conspiracy in this case. *See* government memo pages 6 and 7.

Defendant Lombardo concedes some of the facts the government argues but denies their end conclusion that he conspired to conceal or disguise the identity of the monetary transactions in this case for the purpose of facilitating on-line gambling.

Exhibit 17(A), when read in its entirety, is a document that fully, carefully and completely describes to potential participants what CurrenC Worldwide Ltd. was about. The government

asks this court to pick and choose only specific language that might possibly support their theory of something nefarious. The document must be read as a whole. The document describes what CurrenC is about and carefully describes to potential participants what the company was about.

Yes, the document contains the language quoted by the government. "CurrenC currently has several of the largest "tier one" offshore (non U.S.) sports book corporations as customers." What the government leaves out and asks this court to ignore is the additional language:

> "these sports corporations are all properly and legally
> licensed to do business in their respective countries."

The government, on page six of their memorandum, argues that Exhibit 17(A) contains language that the defendant's were aware that U.S. banks would not process transactions that were labeled 7995 code. The government then argues some nefarious scheme to avoid the use of code 7995. *See* government memorandum pages 6 and 7.

A careful reading of Exhibit 17(A) shows the exact opposite to the government's position:

> Transactions
>
> CurrenC would prefer to be viewed as an internet mall processing several types of transactions. It is desirable to code the transaction as something other than 7995 (gaming). Some banks may shy away from this type of business because of presumed charge backs, or because they are concerned that Visa or MasterCard might determine that the transaction is for gaming and may not want to clear it.

The government would have you believe Exhibit 17(A) was a document soliciting the violation of the law when in fact it is a document describing what might occur and what procedures would be preferred. The language "some banks may shy away from . . ." have quite a

different meaning than the government's argument "the defendant's own statements demonstrate that they were aware of the <u>fact</u> <u>that</u> U.S. <u>banks</u> <u>would</u> <u>not</u> <u>process</u> . . . ." (Emphasis added.)

This court should consider 17(A) in total and not permit the government to selectively choose and selectively interpret its language. When taken as a whole, Exhibit 17(A) establishes that defendant Lombardo was attempting to operate his business venture in full and complete compliance with the law. He was carefully pointing out potential problems and lawful ways to deal with them.

The government, on page 7 of their memorandum, refers to "card issuing banks who are victims in this case." There are no victims in this case.

The government misrepresents Exibist 17(B) to this court. Once again, the government chooses to use selective language out of context to support it's position. Exhibit 17(B) is a document submitted to CurrenC as a response to Exhibit 17(A). It is not a document created by any defendant in this case. Additionally, it is not a document that supports the governments conclusion that the defendants sought out non U.S. banks whose operation would allow the enterprise to illegally facilitate internet gambling. Once again Exhibit 17(B) has to be read as a whole and as a response to Exhibit 17(A). A complete reading of the documents in context establishes this defendant was attempting to operate his business in a lawful manner.

Exhibit 17(C) needs to be considered as a whole and in context, not selectively as the government tries to do. Exhibit 17(C) is a document generated by L.G. and directed to CurrenC describing the activities of L.G. in processing credit card transactions.

The document clearly points out problems that have occurred in regards to the providing of wrong MCC codes by L.G. in the processing of credit cards. The defendant did not participate

in the providing of the wrong MCC code. It was the L. G. memo that further describes that L.G. intends to comply with providing the proper MCC codes. There is nothing nefarious about this memo. In fact, the memo establishes that all parties were intending to comply with what the law requires. Exhibit 17(C) needs to be considered completely and in context.

Once again the government uses Exhibit 15 to argue some illegal and improper motive on the part of the defendant.

Exhibit 15, when read as a whole, is a discussion of how best to structure a business venture. A careful reading of the New York Times article attached thereto shows that the question of whether on-line gambling was legal or not was still an unanswered question. The article points out that while the Justice Department maintains such gambling was illegal, federal judge Stonewood Duval in New Orleans had ruled in a case pertaining to MasterCard that the wire act "does not prohibit internet gambling or a game of chance." *See* New York Times article, Exhibit 15, page 4.

It is disingenuous for the government to argue that this article made it clear the defendants knew they were operating illegally and therefore they took steps to avoid detection.

Exhibits 17(A), 17(B), 17(C) and 15 when read in their entirety do not support the governments theory of this case. In fact, they establish that the defendant's were doing all in their power to operate their business with full compliance with both state and federal law.

## **CONCLUSION**

The evidence submitted in this case fails to prove by a preponderance of the evidence that a conspiracy existed and that Baron Lombardo was a member of the conspiracy.

Respectfully Submitted this 19th day of June, 2008.

/s/ D. Gilbert Athay
D. Gilbert Athay
Attorney for Baron Lombardo

CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

United States Attorney's Office
185 South State Street, Suite 400
Salt Lake City, Utah 84111

/s/ Heather M. Stokes