BRETT L. TOLMAN, United States Attorney (#8812)
D. LOREN WASHBURN, Assistant United States Attorney (#10993)
MARTY WOELFLE, Trial Attorney (AZ #009363)
Attorneys for the United States of America
185 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>BARON LOMBARDO, et al.,<br><br>     Defendants. | Case No. 2:07CR00286 TS<br><br>**GOVERNMENT REPLY TO RESPONSES BY DEFENDANTS FRANCISCO AND KIMBERLIE LOMBARDO REGARDING ADMISSION OF COCONSPIRATOR STATEMENTS** |

The United States of America, through counsel undersigned, hereby states its reply to responses filed by defendants Francisco Lombardo (Doc. #180), and Kimberlie Lombardo (Doc. #181), to the Government's James Hearing Memorandum (Doc. #177). This reply is filed pursuant to the Court's Order (Doc. #189), filed June 24, 2008.

**I.     PROCEDURAL SUMMARY**

The defendants are charged with, inter alia, racketeering conspiracy (Count 1), Title 18, U.S.C. §1962(d). The United States intends to offer evidence at trial pursuant to Fed. R. Evid. 801(d)(2)(E), and therefore made an initial proffer regarding the existence of the alleged conspiracy and each defendant's connection to the conspiracy on October 5, 2007 (Doc. #70). In its initial proffer, the Government offered 14 Exhibits (filed under seal), illustrating the range of

coconspirator statements that will be offered at trial. A <u>James</u> hearing was held on April 14, 2008, during which 13 additional Exhibits were offered, along with the testimony of Internal Revenue Service Criminal Investigation Special Agent Jamie Hipwell. Per order of the Court, the United States filed a listing, by bates number, of the potential coconspirator statements in this case (Doc. #160, filed February 29, 2008) and a hearing memorandum (Doc. #177) on May 19, 2008. Defendants Francisco Lombardo (Doc. #160), Kimberlie Lombardo (Doc. #181) and Baron Lombardo (Doc. #187) filed responses to the Government's hearing memorandum. The Court ordered the Government to file it reply to these responses (Doc. #189) no later than July 7, 2008. Defendants Tina Hill (Doc. #184), Count Lombardo (Doc. #185) and Carson-Selman (Doc. #188) joined in Baron Lombardo's response.

The United States is here replying to the responses of defendants Francisco and Kimberlie Lombardo, as those responses are similar in character. The United States will file a separate reply to the response of defendant Baron Lombardo, encompassing the joinder in that response of defendants Tina Hill, Count Lombardo and Richard Carson-Selman. The Government pleadings outlined above are herein incorporated by reference.

## II.   **RESPONSE FILED BY DEFENDANT FRANCISCO LOMBARDO**

### A.   **The defendant mis-states the legal standard required for the admission of coconspirator statements at trial**

The defendant states that "the government must prove that a conspiracy existed by substantial independent evidence." (Response, p. 2.) In fact, the Tenth Circuit has explicitly rejected the "substantial independent evidence" standard:

> Under Fed. R. Evid. 801(d)(2)(E), statements made by co-conspirators are properly admissible as non-hearsay at trial if the Court determines, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy. It is the burden of the government to prove each of the elements by a preponderance of the evidence and it is the trial court that determines admissibility. In deciding whether the prerequisites for admission of the co-conspirator statements have been satisfied, the Court may consider the coconspirator statements sought to be admitted as evidence of the conspiracy. The Tenth Circuit has held, however, that 'there need . . . be some independent evidence linking the defendant to the conspiracy. *Such independent evidence may be sufficient even when it is not "substantial."*' The Tenth Circuit has defined 'independent evidence' as 'evidence other than the proffered [co-conspirator] statements themselves.'

United States v. Mitchell, Slip Opinion, 2008 WL 2048386, p. *3 (D. Utah 2008) (emphasis added, interior citations omitted); see also United States v. Hall, 473 F.3d 1295, 1302-03 (10th Cir. 2007). Therefore, the Government is required to present independent evidence of the alleged conspiracy, but such evidence need not be "substantial."

  **B.** **The defendant mis-construes the nature of the alleged conspiracy**

  The defendant concedes, for the purposes of his response, that the proffered evidence establishes the existence of a conspiracy to commit bank fraud, but argues that the evidence is insufficient to connect him with that conspiracy. (Response, page 2.) In fact, the defendant is not charged with conspiracy to commit bank fraud, but with racketeering conspiracy.[1] One of the alleged objects of the conspiracy was "to make money illegally by helping Internet gambling

---

[1] The Indictment (Count 1, ¶24) alleges that the defendant "knowingly and intentionally conspired to violate Title 18, United States Code, § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a patter of racketeering activity ... It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in conducting the affairs of the Enterprise." The alleged predicate racketeering activities are bank fraud, money laundering, and violation of the Wire Wager Act.

Web sites conduct their illegal business" by, among other things, "causing Western Union wires of funds to pay for Internet gambling to be disguised as payments to individuals rather than payments to gambling web sites." The Indictment alleges that the defendant "managed and operated the system used to conduct wire transfers through Western Union that supported the businesses engaged in illegal Internet gambling." (¶10.) The company formed by co-defendant Kimberlie Lombardo (QualaSure), used by the defendant to receive payments from the Enterprise, is alleged as one of the organizations involved in the creation and operation of "the credit card and wire transfer operation" used to facilitate illegal transactions. (¶12.) The Indictment states that "[d]efendants Frank and Kittie Lombardo were responsible for monitoring and supervising Western Union wire transfers made through the Gateway." (¶16.) Additionally, "[t]he Gambling Gateway Enterprise promoted and aided and abetted illegal gambling by arranging funds transfers between bettors in the United States and various Internet and telephone gambling operations by using Western Union transfers." (¶22.) Paragraph 33 of the Indictment provides a fairly detailed description of the wire transfer operations conducted by the illegal Enterprise. The Indictment alleges an Overt Act involving the facilitation of gambling using wire transfers. (¶35(a).) The Indictment does allege the development an implementation of a bank fraud scheme as part of the racketeering enterprise, but the charges against the defendant are by no means limited to an allegation of conspiracy to commit bank fraud.

    **C.**    **The defendant's summary of the evidence does not include the proffers regarding wire transactions of the type alleged in the Indictment**

The defendant's claim that the Government has presented insufficient evidence to link him to the charged conspiracy is further based on the defendant's highly selective summary of that evidence. The defendant concentrates on the evidence concerning credit card transactions, and ignores the evidence regarding wire transfers contained in the Government's proffers. The proffered evidence establishes that wire transfers of the type described in the Indictment were part of the operations of the Gambling Gateway Enterprise. For example, Exhibit 4 to the Government's initial proffer (Doc. #70) is an agreement between CurrenC Worldwide UK Ltd and an Internet gambling web site operator. The agreement, dated February of 2004, states that CurrenC would receive "funds from customers in trust for the Client and accounting for same." Exhibit 8 to the proffer contains minutes of a staff meeting held in July of 2006. The minutes contain references to wire issues, and "concern over [and Enterprise agent's] $125 lump sum wire charges." Exhibit 9 contains a fax (transmission date December 24, 2003), which states: "Baron, Richard Henry and Frankie asked me to purchase a WU location, which I did." Exhibit 10 contains an email from "frankie@mrbig007.com" to "Richard Carson" and "Richard@currenc" dated in June of 2006, which transmitted a list of numbers titled "Phone Numbers Monitoring Division." The listings included numbers for "Kittie" and "Frankie Sr."

Exhibit 10 also includes an email exchange between a Hill Financial employee and an Enterprise agent located in the Philippines, dated June of 2006. The email states:

> For outbound charges, here is the computation.
> For the sake of argument
> Principal      :      $2000
> Currenc Fee    :      $115
> WU Fee         :      $18
> We deduct $115 from the funds for the merchant. Then we deduct the WU Fee leaving $97 income. The $97 income is divided between the Philippines and CurrenC so we get $48.50. This is as per our agreement with Richard and Kimberlie when we started doing the PO.

Finally, Exhibit 13 contains a document titled "CurrenC Worldwide G2 Gateway Web Administration," dated in April of 2006. This document contains a list of 13 "MT Agenc[ies]" titled "WU1001 Metro Manila [PH]," "WU1002 Batangas [PH]," "WU1003 Subic," "WU1004 Sogo [PH]," "WU1010 Pelican [Jamaica]," "WU1011 Hopewell [Jamaica]," "WU1012 Crichton [Jamaica]," "WU1201 [PH]," "WU1202 Manila [PH]," "WU1203 Laguna [PH]," "WU1204 Cavite [PH]," and "WU1205 Manila [PH]."[2] On the same page, the document lists "Users," giving a Username of "BigFrankie" for "Frankie Lombardo," and "Kittie" for "Kittie." Also listed are Internet gambling web sites, and co-defendants Richard Carson-Selman, Baron Lombardo, and Tina Hill.

During the James hearing, the Government submitted Exhibit 23, an email from co-defendant Kimberlie Lombardo and representatives of unindicted coconspirator BetonSports, dated in November of 2005. The email was copied to the defendant, as well as co-defendants Baron Lombardo and Richard Carson-Selman. The email states:

---

[2] Manila, Batangas, Subic, Laguna and Cavite are cities or provinces in the Philippines. There is a prominent chain of hotels in Manila named "Sogo."

>CurrenC would like to Welcome all of you ... to our Online Processing. You have been approved for our CurrenC Credit Card Processing and our Money Transfer Processing Services. ...
>Below you will find your Usernames and Name Titles. . the Passwords will follow in a second email for security reasons. (Our Gateway is case sensitive and alpha numeric) (The URL ... is g2.currenc.com.)
>Our Credit Cards are automatic through our API, or you may also load them manually via the Support and Manager Title Logins. (Both are 24 hours/365. These services provide the ability for your customers to make deposits via Money Transfer Remittance Services. Transfers are processed and confirmed LIVE within minutes of each transfer. (Our MT Transfers are settled weekly via a bank wire transfer.
>Our Maximum MT is 5000.00 per transfer...unlimited per Client. We will verify and correct all fields proer [sic] notes. (including the fee field actually paid by our Clients.)
>We have live communication via several chat services to assist you with all live transfer and processing help.

Exhibit 25, also offered during the <u>James</u> hearing, consists of an email exchange between the defendant and an Enterprise employee, dated in August of 2005. The first email is from "frankie@mrbig007.com,"[3] and is copied to "kimberlie@currenc.com." The email states:

>As you know, our QualaSure Inc. check was late again. As well as being late, there were monies taken out to pay for the Hill Fin. cell phones. This being said, we do not want any monies taken out of our checks without our approval and proper notice.
>We need our check mailed no later then [sic] the 10TH of each month, and we will deposit it on the 15TH.
>Feel free to contact the partners to let them know about our request and the vents leading up to this request.
>PS We appropriate [sic] you spending over $13.00 a month to get our check to us, but we find this to be a waste of money compared to 32 cents. Hopefully, the new mail date will take care of this overspending.

---

[3] Both the emails in this Exhibit show a printing anomaly; some letters are replaced by an "equals" sign [=].

The email is signed "Frankie Lombardo CEO QualaSure Inc." The responding email declined to issue the defendant's check prior to the 15th of each month, and was copied to co-defendants Richard Carson-Selman, Baron Lombardo, Henry Bankey and Tina Hill.

> **D.** **The proffered evidence establishes the existence of the racketeering conspiracy and the appropriate basis for the admission of coconspirator statements**

The defendant states that "[h]e neither participated in nor entered an agreement to participate in [the alleged] bank fraud." The Government's position is that the defendant did know about and agree to the bank fraud scheme alleged in the Indictment. However, it is not necessary for the Court to find that the defendant participated in the bank fraud prior to allowing the admission of coconspirator statements against the defendant at trial. The essence of a racketeering conspiracy is an agreement that the affairs of an enterprise engaged in or affecting interstate or foreign commerce will be conducted through racketeering activity, and that at least two racketeering acts will be committed by a coconspirator. "The conspiracy element of § 1962(d) requires the Government to demonstrate only that the defendant knew about and agreed to facilitate the commission of-rather than personally committed or agreed to commit-at least two of the predicate acts constituting a pattern of racketeering activity that were proven at trial." United States v. Smith, 413 F.3d 1253, 1272 (10th Cir. 2005).

The proffered evidence establishes, by a preponderance of the evidence, that there was an agreement among the defendants to conduct the affairs of an enterprise by illegally facilitating Internet gambling using credit cards and Western Union wire transfers. The evidence establishes that the defendant was involved in at least the wire transfer operations of the Enterprise; and that the defendant oversaw multiple racketeering acts of the type alleged in the

8

Indictment. All of the proffered statements involved at least one of the defendants, and occurred during the time period alleged in the Indictment. There is independent evidence from banks, credit card companies, and gamblers to demonstrate that the illegal transactions orchestrated by the Gambling Gateway Enterprise occurred.[4]  Therefore, the proper foundation for the admission of coconspirator statements has been established.

### E.  The Indictment does not charge the defendant with conspiracy to violate gambling laws

The defendant claims "that the government takes the position that the defendants conspired to violate local gambling laws and the wire wager act, 18 U.S.C. 1084." (Response, p. 7.) This is incorrect. The Indictment charges that the defendant "knowingly and intentionally conspired to violate Title 18, United States Code, § 1962(c), that is, to conduct and participate, ... in the conduct of the affairs of the Enterprise through a pattern of racketeering activity consisting of multiple acts involving gambling chargeable under [multiple State statutes]; and multiple acts indictable under [the Wire Wager Act]." (¶¶24, 24(a)). This does not allege, nor has the Government asserted, the conspiracy described by the defendant.

The defendant claims that the Government must present evidence to prove that a violation of the Wire Wager Act actually occurred, in order to lay the appropriate foundation for the admission of coconspirator statements. (Response, p. 8.) Again, the defendant misapprehends the nature of the charge in this case. The defendant is charged with conspiracy; the gravamen of a conspiracy is an illegal agreement. "It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct

---

[4] Tr. pp. 19, 29.

evil, dangerous to the public, and so punishable in itself." Salinas v. United States, 522 U.S. 52, 65, 118 S.Ct. 469, 477, 139 L.Ed.2d 352 (1997). The Government must prove that the Enterprise was operated through a pattern of racketeering activity, but not until trial. United States v. Smith, 413 F.3d 1253, 1269-70 (10th Cir. 2005).

The defendant further claims that, because his participation in the Gambling Gateway Enterprise occurred in Nevada, violations of gambling laws in states other than Nevada cannot be considered as racketeering acts in this case. (Response, p. 8.) This claim entirely misconstrues federal law regarding racketeering conspiracy and the allegations in the Indictment. First, the Indictment does not charge that the defendant personally committed any of the alleged racketeering acts. Second, proof that the defendant participated in the alleged conspiracy does not require the Government to prove that the defendant personally committed a racketeering act. "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion." Salinas, 522 U.S. at 477, 118 S.Ct. 467, 477.

Third, federal statute provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued or completed." Title 18, U.S.C. § 3237(a). The racketeering conspiracy in this case is alleged to have occurred "in the District of Utah and elsewhere." The violations of state gambling laws listed in Count 1 were facilitated by the Enterprise. From at least 2004, to at least the autumn of 2005, significant

portions of the Enterprise, integral to the objectives of the Enterprise, were located in Utah. Significant financial operations of the Enterprise, including monitoring Western Union money transfers, were processed through the gateway, which was created and maintained by employees in Utah. Therefore, the state law violations are appropriately pled as racketeering acts in this case. The physical location of the defendant is irrelevant to the pattern of racketeering activity alleged in Count 1.

### F.    The proffered evidence adequately establishes the defendant's participation in, and knowledge of, the alleged conspiracy

The defendant claims that the Government has failed to present any evidence that the defendant was aware of the objectives of the conspiracy. In fact, the proffered evidence is more than adequate to demonstrate the defendant's knowledge. "To prove knowledge of the essential objectives of a conspiracy, the government does not have to show the defendant knew all the details or all the members of a conspiracy. Rather, the government only needs to demonstrate the 'defendant shared a common purpose or design with his alleged coconspirators.'" United States v. Yehling, 456 F.3d 1236, 1240 (8th Cir. 2006).

The evidence summarized above includes Exhibit 10, which demonstrates that the defendant discussed "monitoring" with coconspirators, and Exhibit 13, which demonstrates that the defendant was involved in the administration of the Enterprise's Internet web sites. Exhibit 23 demonstrates that the defendant was provided with information regarding the agreement between the Enterprise and unindicted coconspirator BetonSports, including the availability of "Money Transfers." Exhibit 25 establishes that the defendant was paid by the Enterprise. Further, for the purposes of this determination, the defendant does not dispute that he was involved in the Western Union transactions conducted by the Enterprise. There is sufficient

evidence to determine, by a preponderance of the evidence,[5] that the defendant was aware of the objectives of the racketeering conspiracy.

The defendant argues that "[t]here was no evidence introduced nor arguments made to establish that transferring money via Western Union outside of the United States to be used in <u>legal</u> gambling is illegal. Since all of the activities occurred outside of this country, any knowledge of illegality in the gambling operation cannot be inferred." (Response, p. 9.) Contrary to this assertion, there is no basis upon which any of the gambling activity facilitated by the Enterprise could be termed "legal." Every transaction originated in the United States, where Internet gambling across state boundaries is prohibited by Title 18, U.S.C. § 1084. The defendant has admitted that he knew that money was received in the Philippines, and directed to gambling web sites. (Response, p. 9.) Therefore, the defendant knew that the Enterprise was "causing Western Union wires of funds to pay for Internet gambling to be disguised as payments to individuals rather than payments to gambling web sites," one of the objects of the racketeering conspiracy. (Count 1, ¶4.)

The defendant states that evidence showing he was paid by the Enterprise "does not demonstrate his knowledge of illegal activity." (Response, p. 9.) However, this evidence does demonstrate the relationship between the Enterprise and the defendant, and analyzed in light of the Government's proffer, demonstrates that the defendant knowingly and intelligently became a part of the Enterprise's activities.

---

[5] "Preponderance of evidence is evidence sufficient to persuade you that a fact is more likely present than not present." <u>Tenth Circuit Criminal Pattern Jury Instructions</u>, § 1.05.1 (2006).

G. **The proffered evidence demonstrates that the defendants were dependent upon each other in conducting the affairs of the racketeering Enterprise**

The defendant argues that the evidence regarding the Enterprise's wire transfer operations did not further the bank fraud, and therefore lack the interdependency necessary to prove a conspiracy. (Response, p. 10.) As noted above, this misstates the conspiracy alleged in the Indictment. The evidence presented by the Government clearly shows that the defendants were dependent upon each other to conduct the affairs of the racketeering Enterprise. For example, Exhibits 2, 3, 17A & 17B demonstrate that the Enterprise depended on defendant Carson-Selman to represent CurrenC abroad, and to acquire banking relationships; Exhibit 8 demonstrates that the conspirators divided tasks between them, and monitored completion of those tasks; Exhibit 9 shows reliance on individuals in the Philippines to handle matters relating to Western Union transfers; Exhibits 10, 11, 18 & 25 demonstrate that Hill Financial handled accounting matters for the Enterprise; Exhibits 20, 21 & 22 demonstrate that the Enterprise relied on defendant Count Lombardo for technical matters; and Exhibits 23 & 24 show the interrelationship between the Enterprise and unindicted co-defendant BetonSports.

> Interdependence exists when 'each alleged coconspirator ... depend[s] on the successful operation of each "link" in the chain to achieve the common goal.' In other words, each coconspirator's 'actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.'

United States v. Yehling, 456 F.3d 1236, 1241 (10th Cir. 2006). The requisite interdependence among the coconspirators has therefore been established.

### III.   RESPONSE FILED BY DEFENDANT KIMBERLIE LOMBARDO

#### A.   The defendant mis-states the nature of the conspiracy

In arguments similar to those asserted by her co-defendant husband, defendant Kimberlie Lombardo has attempted to re-draw the parameters of the alleged conspiracy. The defendant states that "the Government has alleged a conspiracy whose purpose was to facilitate online gambling by disguising or concealing the identity of monetary transactions for customers using their credit cards to participate in on-line gambling." (Response, p. 2.) As noted above (Section II.B), the illegal agreement described by the defendant may be part of the Enterprise's illegal activities, but it is not the conspiracy charged in Count 1 of the Indictment.

In Count 1, the defendants are charged with "being persons employed by and associated with the Gambling Gateway Enterprise" ... knowingly and intentionally conspiring "to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity . . ." (Count 1, ¶24.) Count 1 alleges that the defendant "among other things, managed and operated with her husband Frank Lombardo the system used to conduct wire transfers through Western Union that supported the businesses engaged in illegal Internet gambling." (Count 1, ¶11.) Paragraph 16 of the Indictment states that "[d]efendants Frank and Kittie Lombardo were responsible for monitoring and supervising Western Union wire transfers made through the Gateway." The allegation of the wire transfer operation of the Enterprise is further described in ¶31. Therefore, the defendant's characterization of the charged conspiracy is not correct, and cannot be used as a starting point for analysis of the application of Fed. R. Evid. 801(d)(2)(E).

### B. The proffered evidence establishes, by a preponderance of the evidence, that the defendant was a member of the alleged conspiracy

The defendant claims that, even if the Government's evidence establishes the existence of a conspiracy, it fails to prove that she was a member of that conspiracy. (Response, p. 3.) The defendant claims that because she did not create false names to provide to gamblers to use as straw recipients in wagering funding transactions, but "merely passed them along to customers, as directed by her superiors," she was not a member of the conspiracy, acting to further its goals. The Government disputes this description of the defendant's role in the conspiracy, but assuming its validity for the purposes of this pleading, this analysis assumes that criminal liability attaches only to the leaders and managers in a racketeering conspiracy, which is incorrect. As stated in United States v. Small, 423 F.3d 1164, 1182 (10th Cir. 2005), "[a] defendant need not have knowledge of all the details or all of the members of the conspiracy and may play only a minor role in the conspiracy." The defendant's argument also omits an essential fact; the defendant's "superiors" are her co-defendants. By definition, her admitted conduct shows that she "shared a common purpose or design with [her] alleged co-conspirators." United States v. Yehling, 456 F.3d 1236, 1240 (10th Cir. 2006).

The defendant asserts that there was no evidence or testimony to indicate that she knew the names she provided were false. This is incorrect. Exhibit 10 contains an email from "Kittie" to various recipients, including one whose email address includes the name of an Internet gambling web site, dated in March of 2006. This email transmitted "your 1018-[Internet Gambling Web Site] MT Processing Statements for the month of December of 12/04-12/31/05." Exhibit 7 contains the agreement executed in June of 2005 between CurrenC and [the Internet

15

Gambling Web Site], under which the Enterprise provided processing services to that entity. The listing of the Enterprise's "merchants" contained in Exhibit 13 includes an entry for [the Internet Gambling Web Site], MID (Merchant Identification Number) 1018. Therefore, it can be concluded that the defendant knew that "MT" funds were received by the Enterprise on behalf of an Internet gambling web site, and not the recipients whose names she provided to individual gamblers.

The defendant makes essentially the same argument regarding evidence that she dealt with CurrenC's clients on behalf of the Enterprise: "her role was limited to relying the information through email . . . at the direction of others . . . ." (Response, p. 4.) The defendant's argument is not supported by the evidence, (the email referred to in Exhibit 10 was signed "Kittie CurrenC Worldwide Processing Manager"); however, even if the defendant's role were truly what she claims, it would not insulate her from membership in racketeering conspiracy described in the Indictment. It is irrelevant whether the defendant undertook the tasks described on her own initiative, or at the behest of a coconspirator. As long as there is some evidence to indicate that she knew the overall objectives of the conspiracy, and that she voluntarily joined the agreement, her position in the conspiracy hierarchy is legally irrelevant for the purpose of determining the admissibility of coconspirator statements.

The defendant asserts that the Government "admitted in proffer that the company had other legitimate business pursuits." The defendant provides no citation for her assertion; she apparently refers to testimony at the James hearing regarding Enterprise payment processing for Internet pharmacies and "adult" material. (Tr. pp. 13 - 14.) The Government did not state that this conduct was "legitimate." It is the Government's position that these "clients" were most

16

likely operating illegally, as were the Enterprise's Internet gambling clients.

The defendant claims that the Government has offered no evidence to show that she knowingly and voluntarily joined the Enterprise, and the racketeering conspiracy. In fact, the evidence is more than sufficient to establish the defendant's knowing participation in the affairs of the Enterprise. For example, in Exhibit 8, the minutes of a meeting held during July of 2006 state the following:

> Discussion #5: Terminal Fee   Action: Confirm conclusion and determine who needs to be contact [sic] and best party to contract clients (Kitty) ... Responsible party: Kitty.

Minutes of a meeting held in April of 2006 state:

> <u>Kimberlie - QualaSure</u> - Kimberlie runs tracking portion of MT on Gateway. Merchants use tracking software via the Gateway of WU movements/bets. Makes sure transactions are completed, funds, proliferation of contracts. Customer maintenance, communication, interfacing, set up customer logins.

An email exchange included in Exhibit 11 dated October of 2004 concerns settlement procedures between the Enterprise and something called "Lowepay." The email is addressed to "Tina Hill; henry@currenc.com; kimberlie@currenc." In Exhibit 17C, there is a copy of a letter sent by LG Card (the Enterprise's bank in South Korea) to CurrenC Worldwide in February of 2005. In this letter, "Lowepay" is listed as an Internet gambling entity whose credit card transactions had been improperly coded. Based on this evidence, the Court should conclude that the defendant was actively involved in settlement of the Enterprise's Internet gambling client accounts.

Exhibit 24 contains an email exchange between the defendant (on behalf of CurrenC) and unindicted coconspirator BetonSports. The email, dated October of 2005, transmitted an agreement for processing services between BetonSports and CurrenC. The agreement was signed by the defendant, on behalf of CurrenC. Exhibit 23 contains an email confirming the

acceptance by CurrenC of BetonSports as a "client:" "CurrenC would like to Welcome all of you ... to our Online Processing.  You have been approved for our CurrenC Credit Card Processing and our Money Transfer Processing Services."  This evidence demonstrates that the defendant was very much involved in the Enterprise's illegal financial processing activities, at a fairly high level.

**IV.     CONCLUSION**

The Government has presented sufficient evidence regarding the conduct of defendants Francisco and Kimberlie Lombardo within the racketeering Enterprise, and their knowing and voluntary participation in the alleged racketeering conspiracy, to provide a basis for the admission of coconspirator statement pursuant to Fed. R. Evid. 801(d)(2)(E).  Therefore, the Court should find that the alleged conspiracy existed, and that the defendants knowingly and voluntarily joined the conspiracy.  Therefore, upon an appropriate showing by the Government as to particular statements,[6] those statements should be admitted at trial.

Respectfully submitted this 7th day of July, 2008.

BRETT L. TOLMAN
United States Attorney

/s/ *D. Loren Washburn*
D. LOREN WASHBURN
Assistant United States Attorney

/s/ *Marty Woelfle*
MARTY WOELFLE
Trial Attorney
Organized Crime & Racketeering Section

---

[6] A listing of particular statements is to be provided to defense counsel on or before February 10, 2009, and a final hearing on the issue is set for March 10, 2009.

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 7, 2008, the foregoing was filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

D. Gilbert Athay
43 East 400 South, Suite 325
Salt Lake City, UT 84111-2767

David V. Finlayson
David V. Finlayson, LLC
43 East 400 South
Salt Lake City, UT 84111

Scott C. Williams
Scott C. Williams LLC
43 East 400 South
Salt Lake City, UT 84111

Mark R. Gaylord
Ballard Spahr Andrews & Ingersoll, LLP
One Utah Center - Suite 600
201 South Main Street
Salt Lake City, UT 84111-2221

G. Fred Metos
McCaughey & Metos
10 West Broadway, Ste. 650
Salt Lake City, UT 84101

Vanessa M. Ramos
Utah Federal Defenders
46 W. Broadway, Ste. 110
Salt Lake City, UT 84101

Michael Pancer
4th Floor
105 West F Street
San Diego, CA 92101-6036

Fred D. "Pete" Gibson III
Lionel Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street
1700 Bank of America Plaza
Las Vegas, NV 89101

Christopher Mathews
Lionel Sawyer & Collins
300 South Fourth
1700 Bank of America Plaza
Las Vegas, NV 89101

/s/    *Marty Woelfle*