MICHAEL PANCER
Lawyer for Defendant Carson-Selman
105 West "F" Street, 4thFloor
San Diego, California 92 101-6087
Telephone: (619) 236-1826

LONI F. DeLAND (0862)
Local Counsel for Defendant
43 East 400 South
Salt Lake City, Utah 84111
Telephone: (801) 364-1333

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | MOTION FOR DEPOSITION OF FOREIGN WITNESS CHIHYON |
| | : | REVELES; MEMORANDUM OF LAW; AND DECLARATION AND EXHIBITS |
| Plaintiff, | : | IN SUPPORT |
| vs. | : | Case No. 2:07CR286 |
| RICHARD CARSON-SELMAN, | : | Judge Ted Stewart |
| Defendant. | : | |

The defendant, Richard Carson-Selman, through counsel hereby moves this Court pursuant to Fed. R. Crim. P. 15 for an Order authorizing the video taped deposition of foreign defense witness Chihyon Reveles who will provide exculpatory testimony regarding Mr. Carson-Selman's alleged participation in the RICO conspiracy and the substantive offenses alleged in the indictment and who is willing to testify under Oath and be subject to cross-examination by the government but is unwilling to travel from South Korea to the United States to testify at Mr. Carson-Selman's trial herein.  Said motion is based on all the files, papers and pleadings in this action, the attached memorandum of law and the declaration of Ms. Reveles and Exhibits attached hereto, and such evidence and authority as may be adduced at the hearing on this motion under Fed. R. Crim. P. 15.

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DEPOSE FOREIGN DEFENSE WITNESS

## I.

## INTRODUCTION

In order to defend against the instant indictment, it will be necessary for defendant Carson-Selman to submit video taped testimony from a witness who worked as an liaison and translator between defendant Carson-Selman at CurrenC and Kang-Shin Koh who was the manager of International Administration at LG in Seoul, Korea. She would testify that there were numerous three-way conversations between Mr. Carson-Selman in the United States and Mr. Koh and herself in Korea. In addition, there were also two meetings in which Ms. Reveles attended as a translator with Mr. Carson-Selman and Mr. Koh in the LG office in Seoul. Ms. Reveles would testify that LG and Mr. Koh knew that they were processing gambling transactions for "CurrenC" and that Mr. Carson-Selman insisted that LG understood that they were gambling transactions and that he wanted this language included in contracts. As far as Ms. Reveles was personally aware, there was never any attempt by Mr. Carson-Selman to mislead LG about any aspect of the business that CurrenC was involved in.

As a Korean national, who currently lives in Korea, defense witness Reveles is unwilling to travel to the United States and the State of Utah to testify on defendant's behalf in United States v. Richard Carson-Selman, Case No. 2:07CR286. However, she avers in her declaration that she would give testimony at a deposition at the United States Embassy in Korea. See attached Declaration of Chihyon Reveles. Because she will not travel to the United States for defendant Carson-Selman's trial, Ms. Reveles' deposition should be ordered pursuant to Rule 15 of the Rules of Federal Criminal Procedure.

## II.

## STATEMENT OF FACTS

According to Count One of the Indictment filed on May 9, 2007, defendants Baron Lombardo, Henry Bankey, and Richard Carson-Selman created a company called CurrenC Worldwide, Ltd, which was the primary company used by them to process credit cards and wire transfers. Other entities using the CurrenC title were created by the defendants in other countries, including Korea, Jamaica, and the United Kingdom. (Ind. ¶¶ 5, 13.) The government alleges that CurrenC Worldwide and the other CurrenC entities had no legitimate business operations. (Ind. ¶ 13.) The indictment further alleges that defendant Tina Hill created a company called Hill Financial Services to provide exclusive accounting and technical services only for the internet gambling businesses using the services of Currenc Worldwide and CurrenC. (Ind. ¶ 14.) Baron Lombardo and others operated a corporation called Gateway Technologies, LLC ("Gateway"), which processed and tracked gambling transactions for the defendants. (Ind. ¶ 15.) Frank and Kittie Lombardo were responsible for monitoring and supervising Western Union wire transfers made through Gateway, while Henry Bankey assisted in supervising the operation of Hill Financial and the formation and operation of the CurrenC companies. (Ind. ¶ 16-17.)

The defendants purportedly used businesses and banks in the United States and other countries to conduct the credit card and wire transfer transactions from the internet gambling operations and to transfer proceeds obtained from credit card and wire transfer transactions to the internet gambling web sites, and into and out of accounts controlled by the defendants. (Ind. ¶ 18.) The defendants formed a number of trust which were used to transfer proceeds into the United States. (Ind. ¶ 19.)

It is by these actions that the government alleges that the defendants promoted and aided and abetted illegal gambling through various internet gambling sites, including but not limited to, those operated by Betonsports PLC, BETUS, and other internet gambling web sites identified in the Indictment as Web Sites A through D.  (Ind. ¶¶ 20, 23.)

The Indictment also alleges that the defendants and others, known and unknown, and their companies, constituted a group of entities and individuals associated as an enterprise ("the Gambling Gateway Enterprise) as defined in 18 U.S.C. §1961(4).  Specifically, that the Gambling Gateway Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise, and that the enterprise was engaged in, and its activities affected, interstate and foreign commerce. (Ind. ¶ 21.)  The enterprise purportedly performed credit cards transactions which defrauded financial institutions and promoted and aided and abetted illegal gambling businesses conducted via the Internet and telephone communications, including using Western Union wire transfers, and provided accounting and funds transfer services for Internet gambling web sites.  (Ind. ¶ 22.)

The indictment charges a racketeering conspiracy beginning no later than 2000 and continuing to the present, with the defendants and others intentionally conspiring to violate 18 U.S.C. § 1962 (c)--to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity consisting of multiple acts involving gambling chargeable under three state statutes and the federal Wire Act, Bank Fraud and Money Laundering statutes. (Ind.¶ 24.) As part of the conspiracy, the enterprise developed and implemented a scheme to defraud financial institutions by processing Visa and MasterCard payments for Internet gambling website, including the mis-classification of credit card transactions to fool the banks into processing Internet gambling charges, the collection monies transferred from bettors in the United States via credit card

transactions, and the transfer of those funds to various Internet gambling websites. (Ind. ¶ 25.)

The indictment further alleges that as part of the conspiracy the enterprise created and operated various business entities and used those business entities to open a bank accounts and credit card processing accounts at various banks and financial institutions. The enterprise used the facilities of the banks and financial institutions to transfer bettors' funds to the gambling website operators and members of the enterprise. (Ind. ¶ 26.) The indictment charges that as part of the conspiracy the enterprise created and operated an Internet website known as the "Gateway." The purpose of the Gateway was to facilitate the final processing of Visa and MasterCard payments on behalf of enterprise's illegal gambling website clients. (Ind. ¶ 27.) In order to ensure that the transactions would be approved, the enterprise mis-classified the credit card transactions to Visa and MasterCard, hiding the fact that the transactions were intended for gambling. (Ind. ¶ 28.)

The indictment also alleges that the enterprise arranged the wire transfer of funds from bettors in United States to various gambling website that were clients of the enterprise and that the enterprise collected gambling funds sent through Western Union and transferred those funds to the operators of the gambling websites. (Ind. ¶ 31.)  As part of the conspiracy the enterprise moved money from various bank accounts it controlled overseas to the United States through payments to various business entities, including Hill Financial and Gateway Technologies, and to private bank counts in United States controlled by the enterprise or the individual defendants. (Ind. ¶ 32.)As part of the alleged conspiracy the defendants created various trusts, and Hill Financial provided accounting services to the enterprise and to individual defendants to keep track of the funds and proceeds transferred. (Ind. ¶¶33 - 34.)

 The indictment that alleges 19 overt acts in furtherance of the RICO conspiracy. (Ind.¶ 35(a)-(s).)

### III.

### THE LAW

It is well settled that in a criminal case a district court trial may order that a prospective witness be deposed in exceptional circumstances when it is in the interest of justice to do so. Rule 15 of the Federal Rules of Criminal Procedure provides:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness by taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place.

*See, e.g.*, Garcia-Martinez v. City and County of Denver (10th cir. 2004) 392 F.3d 1187; United States v. Rothbart, 653 F.2d 462, 464-65 (10th cir. 1981). An order for a deposition in a criminal case under this Rule is left to the sound discretion of the trial court. *See* People of Territory of Guam v. Ngirangas, 806 F.2d 895 (9th Cir. 1993) (that court "may" order deposition be taken indicates discretionary nature of Rule). When a deposition is requested, the relevant factors for a court to consider are the availability of the witnesses, whether a good faith effort has been made to obtain their presence at trial, whether their testimony is favorable and whether the witnesses would be available for the deposition. United States v. Zuno-Arce, 44 F.3d 1420, 1425 (9th Cir. 1995). As recently noted by the Seventh Circuit in United States v. Knox, __ F3d. __ , 2008 WL 4053031 (7th Cir. 2008):

> ...[W]e have not had the occasion to outline any "test" for when the "exceptional circumstances" threshold would be met justifying authorization of foreign depositions; therefore we take note of some factors considered relevant by other circuits. The Ninth Circuit considered whether the deponent would be available at the proposed location of the deposition, whether the deponent would be willing to testify, and the safety of United States officials in going to the foreign location. See United States v. Olafson, 203 F.3d 560, 567 (9th Cir.2000). The Eleventh Circuit focused on the materiality of the proposed testimony, the availability of the witness,

6

whether injustice will otherwise result without the material testimony that the deposition could provide, and whether countervailing factors would make the deposition unjust to the nonmoving party. *See* Thomas, 62 F.3d at 1340-41.The D.C. Circuit listed as critical factors the materiality of the testimony and the unavailability of the witness to testify at trial and also noted that there is "typically some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant." Kelley, 36 F.3d at 1125 (citing cases from the Third, Fifth, and Ninth Circuits).

\* \* \*

To recap, while Knox was persistent in his requests, those requests simply did not provide enough information to justify granting them. He had not contacted potential witnesses; he could not provide a proposed itinerary; he did not sufficiently address the practical or diplomatic issues inherently related to going to foreign countries for these purposes. He could not provide the government with notice of when or where such depositions might occur or even a proposal of how this might be arranged.

Here, contrary to the explicit findings of the Seventh Circuit in Knox, all of the factors[1] identified

---

[1]   The rules governing foreign depositions was also recently summarized in United States v. Trumpower, 546 F.Supp.2d 849, 853-854 (E.D. Cal. 2008) as follows:

"Rule 15 of the Federal Rules of Criminal Procedure permits the taking of a deposition whenever, due to the exceptional circumstances of the case, it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial. United States v. Rich, 580 F.2d 929, 933 (9th Cir.1978). In criminal cases, however, unlike civil cases, depositions are not allowed merely for the purpose of discovery. Id at 933- 34. A defendant may depose a witness only if the witness may be unable to attend trial. Id at 934. In addition, the rule contemplates a party taking the deposition of only his own witness, a requirement that comports with the purpose of preserving testimony. Id.

To determine the need for a deposition in a criminal trial, a district judge focuses on: **(1) the prospective unavailability of the witness at trial; (2) the good faith effort by the movant to obtain the witnesses' presence at trial; (3) a demonstration by the movant that the expected testimony would be favorable; and (4) whether the deponents would be available for deposition and willing to testify**. United States v. Zuno-Arce, 44 F.3d 1420, 1425 (9th Cir.1995). The burden is on the movant to demonstrate the need for a Rule 15 deposition. Id at 1424.

\* \* \*

[T]he circumstances as to <u>the UAE witnesses are classic examples of the exceptional circumstances that bring a witness into the scope of Rule 15. They are each UAE residents who are not subject to the orders of this Court. They are each percipient witnesses of events that are relevant to the charges in this indictment. Each has indicated that they will be available for, and will participate in, a deposition to be held in the UAE as early as May of this year</u>."

by Knox panel from the other circuits, weigh heavily in favor of authorizing the videotaped deposition of Ms. Reveles in this case.

### A. UNAVAILABILITY AND EFFORT TO OBTAIN PRESENCE

In this case, Ms. Reveles is residing in South Korea and cannot be compelled to appear at trial in the United States. *See* United States v. Dragoul, 1 F.3d 1546 (11th Cir. 1993) (potential deponents were unlikely to be available to testify at trial because they were foreign nationals living abroad, beyond the subpoena power of the district court.) The defense has contacted Ms. Reveles and while she wishes to be cooperative, she is not inclined to leave Seoul, South Korea and travel the 5,882 miles (by air)[2] to Salt Lake City, Utah in the United States to testify in Mr. Carson-Selman's criminal case before this Court. Although Ms. Chihyon Reveles is also a Korean national and not subject to the subpoena power of this Court, she nevertheless states in her declaration that she would be willing to testify at a deposition in the U.S. Embassy in Seoul, South Korea. Based on the averments set forth in her declaration, Ms. Reveles' proffer of her testimony at such a deposition would, *inter alia*, exonerate and refute the material allegations against Mr. Carson-Selman contained in ¶¶ 6, 25, 28, 36, 37 and 38 of the indictment that claim that Mr. Carson-Selman was knowingly engaged in a scheme to defraud credit card companies, used banks including LG bank, to transfer proceeds obtained from these fraudulent internet transactions into and out of accounts controlled by the defendants; and that he was part of a RICO conspiracy that purposely mis-classified credit card transactions to hide the fact that the internet transactions were intended for gambling, including the commission of the substantive offenses. Thus, Mr. Carson-Selman has made more

---

[2] *See* http://www.timeanddate.com/worldclock/distanceresult.html?p1=235&p2=220. A color print out of the distance computation in .pdf format is attached as Exhibit "A." The indictment is attached for the Court's convenience as Exhibit "B."

than a sufficient showing that the foreign deposition of Ms. Reveles is clearly warranted in this case and is in the interests of justice to do so. A conclusive showing of unavailability is not required in order to grant a deposition request. United States v. Sines, 761 F.2d 1434, 1439 (9th Cir. 1985). Further, Mr. Carson-Selman affirmatively asserts that the absence of Ms. Reveles testimony will undoubtedly deny Mr. Carson-Selman of his Fifth Amendment due process right to a fair trial and his Sixth Amendment right to present a meaningful defense. *See* Chambers v. Mississippi, 410 U.S. 284, 294, 302 (1973); Washington v. Texas, 388 U.S. 14, 18-19, 23 (1967); Depetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001) *overruled on other grounds* by Payton v. Woodford, 299 F.3d 815, 829 n. 11 (9th Cir.2002) (en banc)("The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense.")

**B.      NATURE OF TESTIMONY**

As noted above and as set forth in her attached Declaration, Ms. Reveles was an eyewitness to critical events in the indictment and her testimony would rebut the government's theory of the case against Mr. Carson-Selman. Ms. Reveles will provide credible exculpatory testimony which will demonstrate that Mr. Carson-Selman did <u>not</u> mislead LG bank with respect to CurrenC's business operations and transactions but specifically informed LG bank and its representatives of the nature of the gambling business that CurrenC was processing the credit cards for. Here, after the credit card transaction was approved by the credit card issuer, LG bank — acting as an acquiring credit card processor — deliberately choose to identify the gambling transactions as something other than gambling in its credit card classification/coding of the transactions to Visa and MasterCard. Consequently, LG Bank was the entity that purposely omitted and did not disclose the fact that the proceeds from these transactions were intended for Internet gambling. (*Cf.* Ind. ¶¶ 27-28.)

Moreover, should Mr. Carson-Selman choose to exercise his right to testify at trial, Ms. Reveles's testimony will corroborate his testimony that he had fully informed LG bank and its representatives of the nature and purpose of the credit card transactions in the internet gambling business that CurrenC was engaged in.

### C.    WILLINGNESS TO BE DEPOSED

Ms. Reveles avers in her declaration that she is willing to appear at a deposition in the United States Embassy in Seoul, Korea. She understands that she would be questioned by both parties and that the testimony will be under oath and it would be videotaped.

### CONCLUSION

Since the failure to Order the requested foreign deposition is likely to result in the absence at trial of testimony crucial to the defense of defendant Carson-Selman, under the extraordinary circumstances presented by this case, it is in the interest of justice under Fed. R. Crim. P. Rule 15, and in conjunction with Mr. Carson-Selman's fundamental constitutional rights to a fair trial and to present a defense, this Court should order a video taped deposition of Ms. Reveles be conducted at the United States Embassy in Seoul, Korea, at a time and date determined by the Court and the parties.

Respectfully submitted,

DATED: September __, 2008            /s/ Loni F. DeLand
                                      Loni F. DeLand Lawyer
                                      for Defendant

CERTIFICATE OF SERVICE

      I hereby certify that on September __, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Loren Washburn
Assistant United States Attorney 185
South State Street, Suite 400 Salt
Lake City, Utah 84111

      /s/ Heather M. Stokes