BRETT L. TOLMAN, United States Attorney (#8812)
D. LOREN WASHBURN, Assistant United States Attorney (#10993)
MARTY WOELFLE, Trial Attorney (AZ #009363)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION
_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BARON LOMBARDO, et al.,<br><br>    Defendants. | Case No. 2:07CR00286 CW<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DEPOSITION OF FOREIGN WITNESS CHIHYON REVELES** |

_____

I. Procedural History

On May 9, 2007, the grand jury returned an indictment charging the defendants with participating in a racketeering conspiracy, bank fraud, aiding and abetting violations of the wire wager act, and various money laundering charges. The racketeering conspiracy charged in Count 1 includes as one of the RICO predicate criminal violations a violation of the bank fraud statute, 18 U.S.C. 1344.

On October 14, 2008, Defendant Richard Carson-Selman filed a motion seeking an order providing for the deposition of Chihyon Reveles, a Korean National who is alleged to have acted as a translator during various meetings between the Enterprise and LG Card, a credit card

processor used by the Enterprise. This motion was joined by defendant Henry Bankey (Doc. # 218, 222, 227).

Because the defendants' motion fails to establish that the testimony sought is material to the issues in the case, the defendant has failed to carry his burden under Federal Rule of Criminal Procedure 15. The motion should therefore be denied.

II.     Statement of Facts

    A.     The Indictment Alleges Does Not Allege That The Defendants Made Any Misrepresentations To LG Card Or Any Employee Of LG Card As Part Of The Bank Fraud Or Racketeering Conspiracy

The Indictment charges in Count 1 that the defendants conspired to participate in a racketeering enterprise that involved Internet gambling transactions. Count 1 listed as predicate criminal acts for the RICO Enterprise various gambling violations under state and federal law, and defrauding financial institutions under 18 U.S.C. § 1344. The Indictment described the Enterprise operated by defendants as one dedicated to processing Internet gambling transactions for illegal, offshore, Internet gambling businesses. As alleged in paragraph 28 of the Indictment,

> In order to assure that these transactions would be approved, the ENTERPRISE mis-classified the transactions to Visa and MasterCard, hiding the fact that the transactions were intended for gambling. In order to assure the ENTERPRISE the ability to mis-classify credit card transactions, the ENTERPRISE paid an amount based on a percentage of the total funds processed to at least one employee of the bank acting as the acquiring credit card processor. The ENTERPRISE received a per-transaction fee on all credit card transactions it processed.

In Counts 2 through 15, the defendants are charged with defrauding the following federally insured financial institutions: Citibank, Harris National Bank, Columbus Bank & Trust, Capital One Bank, Bank of America, FIA Card Services, San Diego Credit Union, North Island Federal Credit Union, HSBC, Chase Bank, Washington Mutual Bank, America First Credit

Union, and First Premier Bank.  Specifically, it is alleged that "[i]t was part of the scheme and artifice that the defendants operated the GAMBLING GATEWAY ENTERPRISE and caused mis-coded credit card transactions to induce the banks and credit unions listed [above] to transfer funds to the owners and operators of Internet gambling businesses." (¶ 36) The Indictment further alleges that, "the defendants processed and caused the processing of . . . credit card transactions, mis-identifying the transactions as something other than Internet gambling.  The fraudulent representations resulted in the transfer of funds from the banks and credit unions to various Internet gambling web sites." (¶ 37).

At no point in the Indictment is it alleged that defendants made any misrepresentations to LG Card.

> B. Long Before The Enterprise Established Its Relationship With LG Card, The Defendants Sought Banks Willing To Participate In Misclassifying Internet Gambling Transactions To The Visa And MasterCard Systems.

In the findings of fact in the Court's Order on James Issues (Doc #192), the Court found:

CurrenC sought to establish relationships with foreign banks that would process the gambling transactions without using the 7995 code.  CurrenC paid a Korean national, Mr. Cho, to facilitate a banking relationship with LG Bank, a Korean bank.

Pg. 3.

This finding was consistent with Exhibits 17A and 17B to the United States' James Hearing Memorandum.  Those exhibits were documents created by the Enterprise describing goals of their business's interest in developing relationships with banks that would process gambling transactions not using the "7995" code.

For example, Exhibit 17A was a description of the Enterprise's business.  In that document, CurrenC described it's transaction processing:

3

> CurrenC would prefer to be viewed as an Internet mall, processing several different types of transactions. It is desirable to code the transaction as something other than 7995, gaming. Some banks may shy away from this type of business because of presumed charge backs or because they are concerned that Visa or Mastercard might determine that the transaction is for gaming and may not want to clear it.

Exhibit 17B, a letter from a contact in the Caribbean to Defendant Carson-Selman, explained that one of the jobs Defendant Carson-Selman asked him to perform was to, "obtain a commitment letter for a relationship with a bank who will comply with your request for the nonuse of the code 7995 for gaming."

These two documents demonstrate that the Enterprise was actively seeking a relationship with banks that would code Internet gambling transactions as something other than "7995," the code that the defendants knew was applicable to Internet gambling transactions. The defendants also explained the reason they were seeking a bank that would mis-code the transactions: without miscoding, "Visa or MasterCard might determine that the transaction is for gaming and may not want to clear it." Exhibit 17A to United States James Hearing Memorandum. These documents were all created prior to CurrenC's relationship with LG Card.

III.  Argument

    A.  <u>The Testimony Of The Witness, Chinyon Reveles, Would Not Prove Any Fact That Is Material To Any Issue In This Case</u>.

Under Rule 15(a) of the Federal Rules of Criminal Procedure, the Court may order the deposition of a witness, "because of exceptional circumstances and in the interest of justice." The Tenth Circuit has held that two important factors in determining if exceptional circumstances exist are "the materiality of the testimony and the unavailability of the witness." <u>United States v. Fuentes-Galindo</u>, 929 F.2d 1507, 1509 (10th Cir. 1991). This standard is also

followed by other Circuit Courts.  United States v. Ismaili, 828 F.2d 153, 159 (3d Cir. 1987) ("it nevertheless has been established that when the district court exercises its discretion in ruling on a Rule 15(a) motion, considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical."); United States v. Thomas, 62 F.3d 1332, 1341 (11th Cir. 1995); United States v. Dillman, 15 F.3d 384, 389 (5th Cir. 1994) ("it is emphatically clear to us that the words 'in the interest of justice' call for the deposition to offer evidence that is material.").  The Court should also consider whether any, "countervailing factors would make the deposition unjust to the nonmoving party." Thomas, 62 F.3d at 1341.

In the defendants' motion, they describe the testimony they seek to obtain using Rule 15[1]:

> Ms. Reveles would testify that LG and Mr. Koh knew that they were processing gambling transactions for "CurrenC" and that Mr. Carson-Selman insisted that LG understood that they were gambling transactions and that he wanted this language included in contracts. As far as Ms. Reveles was personally aware, there was never any attempt by Mr. Carson-Selman to mislead LG about any aspect of the business that CurrenC was involved in.

Defendant's Motion at 2.

Carson-Selman claims that this testimony would:

> exonerate and refute the material allegations against Mr.Carson-Selman contained in ¶¶ 6, 25, 28, 36, 37 and 38 of the indictment that claim that Mr. Carson-Selman was knowingly engaged in a scheme to defraud credit card companies, used banks including LG bank, to transfer proceeds obtained from these fraudulent internet transactions into and out of accounts controlled by the defendants; and that he was part of a RICO conspiracy that purposely mis-classified credit card transactions to hide the fact that the internet transactions were intended for gambling, including the commission of the substantive offenses.

---

[1]The Defendant's motion refers to Exhibits that were not attached to the motion or filed therewith.  At the request of the United States those exhibits were provided via email.  The declaration of the defendants' proposed witness, as provided to the United States by the Defendant Carson-Selman, is attached as Exhibit 1 to this motion.

Motion at 8.

There is a disconnect between the witness's proposed testimony and its probative value as described in the defendant's motion. Testimony that Defendant Carson-Selman told LG Card that the transactions CurrenC would process were from Internet gambling would prove at most that LG Card's undisputed participation in the scheme was knowing rather than unknowing. However, LG Card's knowledge is irrelevant to the defendants' criminal culpability. The Defendants are charged not with misleading LG Card, but with misleading credit card issuing banks by causing gambling transactions to be coded something other than "7995." For a large portion of the conduct covered by the Indictment, LG Card was a necessary participant in this criminal conduct. Whether LG Card participated with knowledge or without knowledge of the substance of the transactions is absolutely irrelevant to the defendants' criminal culpability.

Furthermore, evidence that Defendant Carson-Selman disclosed the nature of the transactions to LG Card is not probative of intent to defraud U.S. based credit-card issuing banks. As is clear from the Exhibits 17A and 17B, CurrenC disclosed the nature of its business to foreign banks in an effort to convince those foreign banks to process and mis-code the gambling transactions. Telling the truth to a non-victim foreign bank is hardly a defense to a charge of deliberately misleading domestic victim banks.

The material issue in this case is whether the defendants participated in a scheme to mislead domestic credit card issuing banks by causing credit card transactions to be miscoded. Evidence that the defendants enlisted the knowing assistance of foreign banks in this process does not exonerate the defendants. It is not otherwise material to the matters at issue in this case. Consequently, the deposition would not provide any measurable worthwhile evidence.

      B.      <u>Because Evidence Sought Is Not Material And The Probative Value Of The Testimony Is Negligible, The Court Should Not Order The United States Or The Non-moving Defendants To Incur The Expense Of Traveling To Korea For The Deposition Of This Witness</u>.

As noted above, before ordering a deposition of a witness under Rule 15(a), the Court should first consider whether countervailing factors would make ordering the deposition unjust to the non-moving parties. Two of the seven defendants have moved the Court to order the deposition. In order to have the deposition be admissible at trial, the remaining five defendants as well as the United States, must participate in the deposition, which the Defendant proposes be video-taped in the United States Embassy in Seoul, Korea. In order to preserve confrontation rights, each of the defendants would have to be present at the deposition or waive their presence. In either event, counsel for each defendant would be required to travel to Korea for the deposition. The expense imposed upon the defendants as well as on the United States would be substantial. As noted in the Defendant's motion, this trip would entail thousands of miles of flights and more than a dozen hours of travel for the parties, investigators, and attorneys. In light of the evidentiary value of the deposition, which would be slight at best, the cost of traveling to Korea to take the testimony of Chihyon Reveles would impose an unjust burden. Therefore, the Court should not order the deposition.

      C.      <u>If The Court Orders The Deposition, It Should Order That A Special Master Be Present To Resolve Any Disputed Matters That May Arise During The Deposition In Korea</u>

Title 18 of the United States Code provides for the appointment of a special master to preside at a deposition of a witness in a criminal case when the deposition takes place in a foreign country. Section 3507 provides, in part:

> Upon application of a party to a criminal case, a United States district court before which the case is pending may, to the extent permitted by a foreign country, appoint a special master to carry out at a deposition taken in that country such duties as the court may direct, including presiding at the deposition or serving as an advisor on questions of United States law.

If the Court were to order the deposition of the witness to take place in Korea, the United States requests that the Court appoint such a special master to carry out the deposition. Depositions in criminal cases are unusual and present unusual evidentiary problems. In order to avoid problems that could make the deposition testimony inadmissible or otherwise frustrate the purpose of the deposition, a special master should be appointed.

IV.    Conclusion

Because the evidence the defendants seek to obtain through this deposition is not material and because the cost to the parties of traveling to Korea for the deposition is high, the Court should not order the deposition of witness Chihyon Reveles.

In the alternative, should the Court order the deposition, the Court should appoint a special master to preside over the deposition.

Respectfully submitted this 29th day of October, 2008.

>> BRETT L. TOLMAN
>> United States Attorney
>>
>> /s/ *D. Loren Washburn*
>> D. LOREN WASHBURN
>> Assistant United States Attorney
>>
>> /s/ *Marty Woelfle*
>> MARTY WOELFLE
>> Trial Attorney
>> Organized Crime & Racketeering Section

## CERTIFICATE OF SERVICE

I hereby certify that on October 15th, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

D. Gilbert Athay
43 E 400 S
SALT LAKE CITY, UT 84111
(801)363-7074
Email: dgathay@msn.com

Michael Pancer
105 W F ST 4TH FL
SAN DIEGO, CA 92101-6036
(619)236-1826
Email: mpancer@hotmail.com

Fred D. Gibson, III
LIONEL SAWYER & COLLINS (LV)
1700 BANK OF AMERICA PLAZA
300 S FOURTH ST
LAS VEGAS, NV 89101
(702)383-8929
Email: pgibson@lionelsawyer.com

G. Fred Metos
10 W BROADWAY STE 650
SALT LAKE CITY, UT 84101
(801)364-6474
Email: fred@gfredmetos.com

David V. Finlayson
DAVID V FINLAYSON LLC
43 E 400 S
SALT LAKE CITY, UT 84111
(801)220-0700
Email: dvfinlayson@qwestoffice.net

Scott C. Williams
SCOTT C WILLIAMS LLC
43 E 400 S
SALT LAKE CITY, UT 84111
(801)220-0700
Email: scottwilliams1@qwestoffice.net

Vanessa M. Ramos
UTAH FEDERAL DEFENDER OFFICE
46 W BROADWAY STE 110
SALT LAKE CITY, UT 84101
(801)524-4010
Email: vanessa_ramos@fd.org

  /s/ D. Loren Washburn
D. Loren Washburn
Assistant United States Attorney