BRETT L. TOLMAN, United States Attorney (#8812)
D. LOREN WASHBURN, Assistant United States Attorney (#10993)
MARTY WOELFLE, Trial Attorney (AZ #009363)
Attorneys for the United States of America
185 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION
_____

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>             Plaintiff,<br><br>v.<br><br>BARON LOMBARDO, et al.,<br><br>             Defendants. | Case No. 2:07CR00286 CW<br><br>RESPONSE TO MOTION TO DISMISS BASED ON UNANTICIPATED EXPANSION OF CRIMINAL LIABILITY TO CREDIT CARD PROCESSORS |

_____

The United States of America, by and through counsel undersigned, hereby submits its memorandum in opposition to defendants'[1] motion to dismiss the Indictment for alleged violation of their right to due process (Doc. #230).  Specifically, the defendants claim that they were not given fair warning that facilitating credit card transactions used to fund illegal betting constituted a violation of the Wire Wager Act, Title 18, United States Code, § 1084.  The defendants' claim to a lack of fair notice is not supported by the facts or the law in this matter, and the motion to dismiss the Indictment should be denied.

---

[1] Defendant Carson-Selman filed this motion to dismiss on October 16, 2008. Defendants Hill (Doc. #204), Count Lombardo (Doc. #206), Baron Lombardo (Doc. #208) and Bankey (Doc. #221) filed motions to join, which were granted by the Court.

I.      FACTUAL SUMMARY

The defendants established, owned and operated the Gambling Gateway Enterprise (the Gateway Enterprise, or, the Enterprise), which provided financial services to Internet gambling web sites operating illegally in the United States. The defendants have been charged with racketeering conspiracy (18 U.S.C. § 1962(d)), bank fraud (18 U.S.C. § 1344), money laundering (18 U.S.C. §§ 1956(a)(1)(B) and (a)(2)(A)), and aiding and abetting the violation of the Wire Wager Act (18 U.S.C. § 1084).

The defendants claim that the application of the Wire Wager Act to Internet gambling "is an unanticipated expansion of criminal liability in violation of the due process clause of the Fifth Amendment." [Motion, p. 3.] The defendants further claim that, because credit card processors have never been prosecuted under the Wire Wager Act, the Indictment represents an unforeseen judicial enlargement of the statute's definition of criminal conduct.

II      DUE PROCESS STANDARDS REGARDING DEFINING CRIMINAL CONDUCT

Article I of the U.S. Constitution provides that individuals may not be held criminally culpable for conduct occurring prior to the definition of the act as a crime. This *ex post facto* provision does not apply to the judicial branch; however, similar, though not co-extensive protection is provided by due process standards applicable to criminal prosecutions. Marks v. United States, 430 U.S. 188, 191-92, 97 S.Ct. 990, 992-93, 51 L.Ed.2d 260 (1977); Devine v. New Mexico Dept. of Corrections, 866 F.2d 339, 341-42 (10th Cir. 1989).

Constitutional due process provisions require that criminal statutes be drafted to give individuals fair warning of the type of conduct that will subject them to criminal culpability. Statutes that are too vague to provide adequate notice, or criminal charges based on a novel and

unforeseeable application of a particular statute will generally not pass Constitutional muster. United States v. Protex Industries, Inc., 874 F.2d 740, 744 (10th Cir. 1989); Evans v. Ray, 390 F.3d 1247, 1252 (10th Cir. 2004).

III.  THE WIRE WAGER ACT IS NOT VAGUE

The defendants apparently claim that the Wire Wager Act should not be applied to Internet gambling, because the laws governing interstate and international gambling are "complex and novel." [Motion, p. 2.] However, the defendants make absolutely no case at all for the proposition that the Wire Wager Act itself is vague, either in general, or as applied in this case.

> The void-for-vagueness doctrine provides that a penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' ... Where a vagueness challenge does not implicate First Amendment freedoms, our review is limited to the 'application of the statute to the particular conduct charged.'

United States v. Michel, 446 F.3d 1122, 1135 (10th Cir. 2006) (internal citations omitted). The defendants claim that the Wire Wager Act is complex because of matters extraneous to the language of the statute, and their argument regarding differing interpretations of the Act as destructive of the notice required by due process are wholly insufficient to demonstrate that the Wire Wager Act is vague, or that its application in this case constitutes an unforeseeable expansion of the Act's provisions.

The Wire Wager Act provides, in pertinent part:

(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result

>of bets or wagers, or for information assisting in the placing of bets or wagers, shall [have committed an offense].

Title 18, United States Code, § 1084. The defendants claim that this statute is "vague or highly debatable" [Motion, p. 2.], but do not, at any point, define *how* the statute fails to meet Constitutional standards. The defendants refer to matters that have absolutely nothing to do with the Constitutional validity of the statute, such as the development of the Internet, the physical location of servers, and international law. None of these factors are relevant to the void-for-vagueness analysis.

The defendants compare the Wire Wager Act with statutes that impose criminal punishment for tax evasion, citing to cases in which courts have dismissed prosecutions because the Government could not establish the requisite intent. However, the tax statutes invariably require a showing of specific intent to violate the law. The defendants are charged with aiding and abetting the violation of the Wire Wager Act, which is a general intent statute. Thus, while the Government must prove that the defendants associated themselves with the actions of individuals involved in the business of betting and wagering, and intended that the gambling businesses succeed, that charge does not require proof that the defendants intended to violate the law. United States v. Phillips, 2008 WL 4416526, p. 10 (10th Cir. 2008). Therefore, citations to cases involving allegation and proof of specific intent crimes are inapposite and irrelevant to the defendants in this case.

The defendants claim that there is "ongoing legal controversy" regarding the scope of the Wire Wager Act, and its application to Internet gambling. The defendants claim that the "novel" application of the Wire Wager Act to their conduct is a violation of their right to due process. The defendants provide several Exhibits, A through E, to illustrate their claim. These Exhibits

are made up of what appear to be news and scholarly articles, the majority undated and without attribution. The Government has traced almost all of these articles to their original publication. Only three[2] of these articles were published prior to the return of the Indictment in this case. None contain a claim that the Wire Wager Act is inapplicable to Internet communications. Most contain statements regarding the illegality of Internet gambling in the United States. For example, the first sentence of the law journal article cited by the defendants states "it is currently illegal both for Internet gambling companies to operate in the United States and for people in the United states to place bets on the Internet."

The defendants claim that the application of the Wire Wager Act to Internet wire communications, as opposed to telephonic wire communications, is a judicial expansion of the statute that may not be applied to them. First, of course, the statute does not distinguish between *modes* of wire communications, and there is no legal or factual basis for drawing such a distinction. As long as the transmissions fit the statutory definition,[3] the mechanism used, computer, telephone, satellite, etc, is irrelevant. Application of the Wire Wager Act to Internet communications does not constitute a novel interpretation of the statute.

---

[2] "Web Gambling Torpedoes ECHO's Deal to be Acquired by Intuit," Digital Transactions, March 27, 2007, Exhibit A, p. 7; "EcoCard Leaves US," unable to locate original publication, dated March 8, 2007, Exhibit A, p. 13; "The Unlawful Internet Gambling Enforcement Act's Effects on the Online Gambling Industry," appearing in Currents, a supplement to the University Of Pittsburgh Journal of Technology Law & Policy, dated April 1, 2007. Currents does not appear in Westlaw, and, as the Exhibit provided by the defendants is incomplete, a full copy of this article is provided for the convenience of the Court as Exhibit C1.

[3] The term "wire communication facility" means any and all instrumentalities, personnel, and services (among other things, the receipt, forwarding, or delivery of communications) used or useful in the transmission of writings, signs, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission. Title 18, United States Code, § 1081.

Second, even if the use of the Wire Wager Act in this case were novel, the defendants make absolutely no showing regarding the foreseeability of the application of the Wire Wager Act to computer communications. In order to make out a denial of due process, a defendant must demonstrate that the judicial construction of the criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." Rogers v. Tennessee, 532 U.S. 451, 457, 121 S.Ct. 1693, 1698, 149 L.Ed.2d 697 (2001).

> The Tenth Circuit has provided guidance in applying the ex post facto principles ... by formulating a two-pronged inquiry. First, we discern whether the statute is 'narrow and precise' on its fact. If so, 'any judicial expansion of that statute beyond its own terms will be considered unforeseeable. Second, if the statute is not so clearly drawn on its face, we ask 'whether the [court's] construction is so unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue as to prevent its application to the conduct at issue as to prevent its application retroactively.'

Evans v. Ray, 390 F.3d 1247, 1252 (10th Cir. 2004) (interior citations omitted). In this case, the application of the Wire Wager Act to Internet-based wire communications is not only foreseeable, it was in fact inevitable. "Wire communication facility" includes "any and all instrumentalities, personnel, and services (among other things, the receipt, forwarding, or delivery of communications) used or useful in the transmission of writings, signs, pictures, and sounds of all kinds." Title 18, U.S.C. § 1081. This definition clearly puts the defendants on notice that computer communications will be included. See United States v. Cohen, 260 F.3d 68, 74-75 (2nd Cir. 2001) (18 U.S.C. §1084 applies to "telephone call(s) or internet transmission(s)"). Therefore, the defendants cannot show any denial of due process in this prosecution.

The defendants cite to a General Accounting Office Report to Congress published in December of 2002 to support their claim that the Wire Wager Act is unconstitutionally vague.

This claim is a re-statement of the arguments made by the defendants in their motion to dismiss the Wire Wager Act violations from the Indictment.[4] The portion of the Report cited by the defendants notes that there had been some disagreement between courts regarding the scope and application of various portions of the Wire Wager Act [Motion, p. 9]. These statements are not relevant in the context of this case, as mere disagreement between courts regarding statutory interpretation does not support an assertion that the subject statute is vague or otherwise Constitutionally defective. Purdom v. United States, 249 F.2d 822, 825 (10th Cir. 1958); United States v. Carson, 793 F.2d 1141, 1147 (10th Cir. 1986) ("While we often rely upon the analysis and decisions of other circuit courts of appeals, ... we are not bound by their decisions or modifications of those decisions.").

      Even if there were generalized evidence of disagreement regarding the application of the Wire Wager Act as the defendants have claimed, such evidence would not be relevant in this case, as the Government will present evidence to establish that the defendants had actual notice that Internet gambling was illegal in the United States. Well before the Unlawful Internet Gambling Enforcement Act (see Section IV, p. 8, below) was passed, the defendants purposefully sought out acquiring banks outside the United States, specifically, foreign banks that would acquiesce in the defendants' misrepresentation of gambling transactions to issuing banks within the United States. Proof of the bank fraud charges [Count 1, ¶ 24(b), Counts 2 - 15] resulting from these misrepresentations will demonstrate that the defendants knew that wire transactions relating to Internet gambling were not legal in the United States. Therefore, as their

---

[4] Motion to dismiss (Doc. #80) filed on October 19, 2007. The United States filed a response (Doc. #117) on November 2, 2007, incorporated herein by reference.

conduct was not protected by the First Amendment, the defendants cannot claim that the Wire Wager Act failed to provide them with adequate notice of potential criminal liability. United States v. Michel, 446 F.3d 1122, 1135 (10th Cir. 2006).

The defendants attempt to "bootstrap" their novelty argument by pointing out that "no other Internet gambling cases where the credit card processors have been prosecuted rather than the 'bookies' or the actual operators of the website where the bets and wagers were placed." [Motion, p. 4.] Whether or not the statement is true, it is legally incorrect and irrelevant. The defendants have been charged with aiding and abetting gambling businesses to violate the Wire Wager Act. "Aiding and abetting and Pinkerton co-conspirator liability are alternative theories 'by which the Government may prove joint criminal liability for a substantive offense.'" United States v. Bowen, 527 F.3d 1065, 1077 (10th Cir. 2006) (interior citation omitted).

> When considering a vagueness challenge to a penal statute, courts begin with the presumption that the statute comports with requirements of federal due process and 'must be upheld unless satisfied beyond all reasonable doubt that legislature went beyond the confines of the Constitution.' The Constitution does not impose '[i]mpossible standards of specificity' upon legislatures. Courts should remain ever mindful that 'general statements of the law are not inherently incapable of giving fair and clear warning.' 'Due process requirements not "designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." ...
> Realistically, 'most statutes ... deal with the untold practical necessities of discharging the business of government inevitably limit the specificity with which legislatures can spell out prohibition.' Consistent with this view, judicial review of a penal statute as applied in a particular case, provided the statute does not threaten to chill the exercise of constitutional rights.

United States v. Welch, 327 F.3d 1081, 1094 (10th Cir. 2003) (interior citations omitted).

Even were the defendants charged directly under the Wire Wager Act, their argument regarding the novelty of the statutes application to Internet wire communications would fail. As

stated above, this interpretation of the Wire Wager Act, does not alter the statutory definition of "wire communication facility." Indeed, there is no point where the communications at issue in this case fall outside that definition. Therefore, even were there no extant cases applying the Wire Wager Act to Internet communications, this prosecution would not be barred under Constitutional due process standards.

> Under [the defendant's] theory, due process would preclude courts from interpreting statutes in the context of individual cases by providing the first defendant prosecuted under the statute with a constitutional defense: the court could not interpret the statute in the first instance (and thereby set a precedent for subsequent cases) because no 'prior judicial decision' had construed the 'very statute' at issue. Such an approach is simply untenable. Moreover, even the Mallas[5] opinion on which [the defendant] so heavily relies acknowledges that 'due process does not require the prosecution to cite a litigated fact pattern directly on point,' and that 'a duty not articulated by regulatory language or judicial construction may nonetheless be compelled by the authoritative force of common sense.'

Sanders v. Freeman, 221 F.3d 846, 854 (6th Cir. 2000).

Of course, the defendants ignore the cases in which courts, State and federal, have held that Internet gambling is illegal in the United States. For example, State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102 (8th Cir. 1999); United States v. Cohen, 260 F.3d 68 (2nd Cir. 2001); and People ex rel. Vacco v. World Interactive Gaming Corp., 185 Misc.2d 852, 714 N.Y.S.2d 844 (N.Y. Sup. 1999). All of these cases pre-date the illegal conduct alleged in the Indictment. The defendants also ignore the fact that unregulated gambling is illegal in every State, though not always punishable by criminal prosecution.

---

[5] The defendants cite to United States v. Mallas, 762 F.2d 361, 363 (4th Cir. 1985) in support of their claim that the Wire Wager Act fails to supply them with adequate notice of their potential criminal liability for aiding and abetting illegal Internet gambling.

IV.   THE UIGEA IS NOT RELEVANT TO THIS PROSECUTION

The defendants spend a great deal of time summarizing and explaining the Unlawful Internet Gambling Enforcement Act of 2006 (UIGEA).  It is not precisely clear why, as this statute was passed after the majority of conduct alleged in the Indictment had already occurred.  The defendants are not charged with violation of the UIGEA.  Further, even if the UIGEA had been available to prosecutors, the choice of charge is well within the discretion of the Government.  Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

The defendants apparently argue that Congress would not have passed the UIGEA if the Wire Wager Act applied to Internet gambling.  This conclusion is based on the erroneous assertion that the UIGEA criminalized Internet gambling.  It did not.  The UIGEA criminalized certain methods of funding illegal Internet gambling.  In passing the UIGEA, Congress made the following finding:

> New mechanisms for enforcing gambling laws on the Internet are necessary because traditional law enforcement mechanisms are often inadequate for enforcing gambling prohibitions or regulations on the Internet, especially where such gambling crosses State or national borders.

Title 18, U.S.C. § 5361(a)(4).  Further, under the UIGEA, "unlawful Internet gambling" means

> to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made.

Title 18, U.S.C. § 5362(10)(A).  Clearly, the UIGEA depends upon other federal and State statutes, such as the Wire Wager Act, to define criminal culpability for illegal Internet gambling.

The passage of the UIGEA did not change the application of the Wire Wager Act in any way.[6]

V.    DISMISSAL OF THE INDICTMENT IS NOT AN APPROPRIATE REMEDY

The defendants request the Court to dismiss the Indictment in this case, based solely on their claims regarding the Wire Wager Act. The defendants do not address the charges of racketeering conspiracy, bank fraud and money laundering that are also alleged. The vitality of these charges is not dependent on the Wire Wager Act allegations against the defendants. Therefore, even if the claims made by the defendants in their motion were true, they would not support dismissal of the Indictment in its entirety. At the very most, the defendants' claims, if taken as true and legally correct, would support only the dismissal of Counts 16 to 19 of the Indictment. Therefore, the remedy requested by the defendants is inappropriate.

---

[6] "No provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States." Title 18, U.S.C. § 5361(b).

VI.  CONCLUSION

In this motion, the defendants have re-dressed their earlier motions to dismiss[7] the Indictment in a new due process wardrobe.  The defendants depend on publications by private parties who merely disagree regarding the scope of the Wire Wager Act, a GAO Report that merely notes that there have been different applications of the statute by various courts, and a failure to acknowledge the legal standards of due process protection as bases for this motion to dismiss.  None of the arguments presented by the defendant, alone or in concert, present a denial of due process in this case, and the defendants motion should be denied.

Respectfully submitted this 30th day of October, 2008.

> BRETT L. TOLMAN
> United States Attorney
>
> /s/ *D. Loren Washburn*
> D. LOREN WASHBURN
> Assistant United States Attorney
>
> /s/ *Marty Woelfle*
> MARTY WOELFLE
> Trial Attorney
> Organized Crime & Racketeering Section

---

[7] These motions, characterized by the Court as "the Wire Act Motion," "the RICO Motion," and "the GATS Motion," were denied in a Memorandum Decision and Order on December 13, 2007 (Doc. #145).

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 30, 2008, the foregoing was filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

D. Gilbert Athay
43 East 400 South, Suite 325
Salt Lake City, UT 84111-2767

David V. Finlayson
David V. Finlayson, LLC
43 East 400 South
Salt Lake City, UT 84111

Scott C. Williams
Scott C. Williams LLC
43 East 400 South
Salt Lake City, UT 84111

Mark R. Gaylord
Ballard Spahr Andrews & Ingersoll, LLP
One Utah Center - Suite 600
201 South Main Street
Salt Lake City, UT 84111-2221

G. Fred Metos
McCaughey & Metos
10 West Broadway, Ste. 650
Salt Lake City, UT 84101

Vanessa M. Ramos
Utah Federal Defenders
46 W. Broadway, Ste. 110
Salt Lake City, UT 84101

Michael Pancer
4th Floor
105 West F Street
San Diego, CA 92101-6036

Fred D. "Pete" Gibson III
Lionel Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street
1700 Bank of America Plaza
Las Vegas, NV 89101

Christopher Mathews
Lionel Sawyer & Collins
300 South Fourth
1700 Bank of America Plaza
Las Vegas, NV 89101

/s/   *Marty Woelfle*