**EXHIBIT A**

1  finished.

2  THE COURT: Thank you.

3  Mr. Washburn, if the transcript is prepared two
4  weeks from today, how long will it take you to prepare a
5  memorandum that will rely upon testimony from this hearing
6  as well as those documents that have now been submitted to
7  the Court to establish the existence and nature of the
8  conspiracy?

9  MR. WASHBURN: Your Honor, could we have three
10 weeks after we get the transcript to put that together?

11 THE COURT: May 19th?

12 MR. WASHBURN: Certainly, Your Honor.

13 THE COURT: All right.

14 Counsel, how long will you need to respond to
15 that?

16 MR. WASHBURN: Can I ask a clarifying question?
17 Do you want memorandum of law and a proposed finding of fact
18 or do you just want --

19 THE COURT: I just want you to identify, for each
20 of those who you allege is a member of this conspiracy, the
21 evidence that you supplied that they are and the other tings
22 that you need to prove to the Court by a preponderance of
23 the evidence.

24 MR. WASHBURN: Okay.

25 THE COURT: Counsel, how long will you need after

1  the 19th of May?

2  MR. METOS: Could we have the same amount of time,
3  three weeks?

4  MR. FINLAYSON: Judge, could we just go one more
5  week? I'm out of the country those last two weeks of May.
6  I will just be getting back. If I could have a couple of
7  weeks.

8  THE COURT: June 16th?

9  MR. FINLAYSON: That would be great. Thanks,
10 Judge.

11 THE COURT: All right. We'll give you until
12 June 16th, counsel. All right.

13 Is there anything else -- Agent, you may step
14 down.

15 Is there anything else we need to do here today,
16 counsel, other than after I leave I want you to set a trial
17 date, another follow-up hearing date for the rest of the
18 James issues?

19 Mr. Metos.

20 MR. METOS: Were you going to set a date for
21 argument on the question of the existence of a conspiracy?

22 THE COURT: No. I'm going to decide it on the
23 briefs.

24 MR. METOS: Okay.

25 THE COURT: Mr. Pancer.

1  hard drives difficult, if not impossible, to access.

2       So we have all those issues, Your Honor. Those

3  are just the ones I have.

4       MR. ATHAY: Just to amplify that, Judge --

5       THE COURT: Mr. Athay, unless you have something

6  different to say, I am going to set a trial date, counsel.

7  And I want it to be realistic based upon what we know right

8  now. I'm not about to leave this thing open-ended. So

9  before you leave, set a trial date, set another date for

10 additional James matters, set a final pretrial conference,

11 and set a date for -- a realistic date for the filing of

12 motions. And I will leave it up to your good judgment as to

13 what those dates ought to be. I'm not going to leave it any

14 more open-ended.

15      MR. WILLIAMS: With regards to what the other

16 James matters means, obviously if the government will

17 ultimately fail with regard to one or more of the defendants

18 on the issue that we were here today on, that would relieve

19 that defendant.

20      THE COURT: Is this a rhetorical question?

21      MR. WILLIAMS: I think the next step for those of

22 us that are used to failing is getting -- we still have an

23 issue here of what are the James statements, have they been

24 sufficiently identified in the course of the present

25 pleadings before this Court. It's my position, on behalf of

```
 1   my client, they have not.  If that's accepted by this Court
 2   or you agree, it seems like we need another deadline for
 3   getting actual James statements.
 4           THE COURT:  Absolutely, you are right,
 5   Mr. Williams.  We will set another date for the subsequent
 6   hearing here.  Then in advance of that, we will set a
 7   deadline by which the government has to supply with some
 8   specificity the exact statements that they intend to seek
 9   admission on as to each defendant.  That is only reasonable.
10   Okay.  So you've got a lot of calendaring to do.  And I'm
11   going to be efficient and move out of here so you can do it.
12           MR. METOS:  One thing that may affect the
13   calendaring is after we submit briefs on the James issue,
14   how long does the Court anticipate taking?
15           THE COURT:  It will not take very long I don't
16   think, Mr. Metos.
17           MS. WOELFLE:  Excuse me, Your Honor.  I am not
18   clear.  We've identified the James statements by Bates
19   number and by position on disks that have been provided to
20   defense counsel.  Is the Court directing us to provide
21   defense counsel with paper copies?
22           THE COURT:  No.  I'm directing you that you
23   identify those that you intend to use at trial.  Mr.
24   Washburn has stated, I believe now twice, that he recognizes
25   that they will not all be used at trial.  And I am putting
```

1  on the government the burden of identifying those that they
2  do intend to use as to each defendant in advance of a
3  subsequent James hearing.
4       Any other questions?
5       MR. ATHAY: In that regard, do they not have to
6  provide you with that information so that you can make that
7  determination?
8       THE COURT: Of course.
9       MR. WILLIAMS: I think that some of this seven,
10 eight, 900 pages of Bates numbers that we've gotten in this
11 identification may contain statements of multiple
12 defendants, multiple other possibly unindicted
13 co-conspirators, if that is their argument. We need some
14 specificity as to which statements are being used and why
15 they would meet the characterization of a co-conspirator in
16 the course of the conspiracy. Am I correct?
17      THE COURT: You are right. If they don't, you
18 will bring that to my attention and they will not be allowed
19 to use them at trial, correct.
20      MR. WILLIAMS: Thank you.
21      THE COURT: Anything else, counsel?
22      MR. ATHAY: No, Your Honor.
23      THE COURT: Thank you, then. I will be in recess.
24      (Whereupon, the proceeding was concluded.)
25

**EXHIBIT B**

| Bates Number Range/Location | Description of Documents |
|---|---|
| Vol 4, Disk #25 | \Tyler's Info\HFS\Miscellaneous\Sporting Bet\05-08-26 KEB London wire rq SpBet reserves - Fax form addressed to Korea Exchange Bank London [note - date is day of access], second page is a wire request dated 8/26/05, signature line for Baron Lombardo, directing transfer of $994,895 to SB PLC USED MAIN for Sportingbet |
| SW-24-00172 | CurrenC statement, 8/21/05 to 8/27/05 |
| SW-06-01276; SW-12-05171 to 05177; SW-24-00257 | Cumulative Outstanding, 8/21/05 to 8/27/05 |
| Residence\88063 0137_S 02_RmA_C03_HD01\ Partial Mac Image Email | 61074 - Email from Jordan Larsen to Sportingbet, 9/9/05, transmitted statements for week ending 8/27/05. |
| SW-12-05031 | Fax to Korea Exchange Bank London, 9/1/05, directed wire transfer of $62,459.88 to SB PLC USED MAIN [sportingbet] signed by Baron Lombardo |
| Vol 4, Disk #25 | \Tyler's Info\HFS\Miscellaneous\Sporting Bet\05-09-01 KEB London wire rq SpBet - Fax form addressed to Korea Exchange Bank London [note - date is day of access], second page is a wire request dated 9/1/05, signature line for Baron Lombardo, directing transfer of $62,459.88 to SB PLC USED MAIN for Sportingbet |
| SW-24-00173 | CurrenC statement, 8/28/05 to 9/3/05 |
| SW-06-01277; SW-12-05214 to 05219; SW-24-00258 | Cumulative Outstanding, 8/28/05 to 9/3/05 |
| Vol 4, Disk #25 | \Tyler's Info\HFS\Miscellaneous\Sporting Bet Reserves analysis - Excel spreadsheet, 9/7/05, May to July, 2005, for all Sportingbet groups |

132